Chrisman *v.* Miller et al.

DAVID CHRISMAN, Appellant, v. DANIEL MILLER, ROBERT SCHUYLER *et al.,* Appellees.

APPEAL FROM McDONOUGH.

B. bargained for three quarter-sections of land, paying therefor a part of the purchase money, the residue to be paid at stated periods, time being of the essence of the contract; he sold to M., under a previous agreement with M., one of the quarter-sections, with similar times and terms of payment, M. having also paid to B. a part of the purchase money; each took possession, and continued therein and made improvements; the vendors to B. declared a forfeiture of the contract for non-payment of the purchase money; M., after the forfeiture declared, told the vendors, that B. could not pay, and M. then purchased the land: Held, that the assignee of B., under such circumstances, could not enforce a claim for the quarter-section originally bought by B.

After a declaration of forfeiture of a contract has been made, where time is of the essence of it, the vendor is at liberty to act as if the contract had ceased, and all parties formerly interested in the forfeited contract, may afterwards deal with the subject of it, as strangers.

No particular manner or form of declaration of forfeiture of such a contract is necessary.

THIS bill alleges that before 25th October, 1848, one Amos S. Burk was desirous of purchasing the north-east of 13, and west half, south-east 12, 4 north, 3 west, and at the same time Daniel Miller was desirous of purchasing the east half of last tract; that Burk and Miller agreed verbally that Burk should go to Quincy, where agent of owners of said lands resided, and purchase said lands in his own name; that Miller should place $30 in hands of Burk, as said Miller's probable proportion, or fourth of the first payment on said half section, and that when Burk should return from Quincy, he and Miller were to enter into a written contract for the payment of the purchase money by Miller to Burk, and conveyance of title by Burk to Miller for said east half, south-east 12, which contract was to correspond with the conditions of the contract that Burk should make in purchasing said half section. Miller paid to Burk $30 in pursuance of said agreement, and Burk went to Quincy, and on 25th October, 1848, made a written contract with Robert Schuyler and others, for the purchase of said half section, said contract being made on the part of Schuyler and others, by their agent, Charles A. Savage, in substance as follows;

Schuyler and others, in consideration of $100, paid by Amos S. Burk, and Burk's agreement to pay $100 on 1st January, 1850, $100 on 1st January in each and every year thereafter, with interest, until $500 should be paid,—(the whole consideration being $600,)—sell to said Burk the south-east 13, 4 north, 3 west, and agree to convey said land by quit-claim deed, upon full payment of said purchase money. Time being the essence of said contract. All payments to be made in Quincy. In case

of failure of said Burk to perform any of the covenants on his part, Schuyler and others " shall have the right to declare this contract void."

Burk paid said $100 recited in said contract, using toward such payment said $30 paid by said Miller. Soon afterwards, Burk and Miller, in pursuance of said verbal agreement, entered into a written contract of same date with Burk's contract with Schuyler and others, whereby Burk bound himself to convey to Miller by quit-claim deed the east half of south-east 12, aforesaid, and Miller agreed to pay Burk upon like terms, one-half the price which Burk had agreed to pay Schuyler and others for said quarter, being half of $350.

The contract between Burk and Miller is in form the same as the one between Schuyler and others and Burk—it acknowledges the receipt of $30 paid by Miller, and Miller agrees to pay the balance as follows: $29¼ on 1st January, 1850, and a like sum on 1st January, every year thereafter, with interest until $175 and interest is paid. Each payment to be made at Quincy. It makes time the essence of the contract, and provides that Burk, in case of failure to perform covenants on Miller's part, " shall have the right to declare this contract void." Burk and Miller paid off the first installments respectively due, as follows: Miller paid Burk $31, and Burk paid Schuyler and others $56, with extension of time to January 1st, 1851, for balance of that payment, which amounts are credited on said written contracts. In October, 1851, Miller paid Burk $25, and Burk paid Schuyler and others $75, which sums are credited on said contracts. That when said $75 was paid Savage, the agent of Schuyler and others told Burk, in Miller's presence, that he would be as indulgent as he could, would not rigidly enforce the contract, and if he had to urge the payment, would give Burk written notice, and not exact forfeiture.

Owing to the failure of crops, etc., Burk failed to make any more payments on his contract with Schuyler and others, Savage, their agent, still assuring him that he would not insist on a forfeiture of contract, and would give notice in writing in time for Burk to get the money. In April, 1853, Burk learned that Miller fraudulently had gone to Quincy, and had made a purchase in his own name of said half section from Schuyler and others, through their agent, Savage.

Miller had failed to pay Burk his proportion of the purchase money, according to his contract, yet in April, 1853, Miller went to Quincy, and there falsely and fraudulently represented to said agent, Savage, that Burk had abandoned all idea of complying with said contract, and that Burk was not able, and did not intend to comply with his contract, but that he, Burk,

intended to keep possession as long as he could, and cheat him, Miller, out of his labor and improvements on east half, south-east 12. Miller, by such false representations, induced Schuyler and others, by their agent, Savage, to sell him said half section, and to execute to said Miller a contract for a conveyance, in consideration of his agreeing to pay the *balance* that was due Schuyler and others on Burk's contract. Representing, also, that his object in making such purchase, was to save said east half, south-east 12, from being lost to him, Miller.

Burk, upon ascertaining that Miller had purchased, tendered and offered to pay Savage, as agent for Schuyler and others, the balance due on his contract with them. Savage refused to receive it, saying he had been deceived by Miller, but had sold him the land, and could not receive the money.

Burk, in two or three weeks after he learned that Miller had purchased said land, offered to pay Miller the balance that would be due on the contract that Burk had made with Schuyler and others, after deducting balance unpaid on Burk's contract with Miller, and that Miller should have the east half of south-east 12, which offer Miller refused. Burk then offered Miller the whole amount of balance due on Burk's contract with Schuyler and others, if Miller would convey the half section aforesaid, and also pay Miller all money that Miller had paid Burk on former contract. That Burk, immediately after he made said contract with Schuyler and others, took possession of and made valuable improvements on north-east 13, and west half south-east 12, aforesaid, worth about $300, and Burk has ever since resided thereon. Miller took possession of and improved the east half of south-east 12, aforesaid.

That Miller, when be bought of Schuyler and others, knew of Burk's possession, and that he did not intend to abandon his purchase, nor to deprive Miller of said east half south east 12.

That on 27th May, 1853, Burk, for a valuable consideration, assigned his interest in said half section by endorsement on said written contract with Schuyler and others, to Chrisman, the present appellant, of which Miller had notice. That Burk has since held possession as tenant of Chrisman, and after his purchase of Schuyler and others, until assignment, Burk held possession in his own right.

Offers to bring into court the money unpaid on contract with Schuyler and others, deducting amount due on contract between Miller and Burk, to allow Miller to retain east half south-east 12, aforesaid, if Miller will convey to him, appellant, the north-east 13, and west half south-east 12, aforesaid. That since the filing of original bill, said Schuyler and others have conveyed all said premises to Miller, and Miller refuses to convey, although

requested, the said north-east 13, and west half south-east 12. Prays process, etc., waives answers being under oath—that court ascertain amount due on the two contracts, and the amount that appellant ought to pay Miller, etc., and that Miller convey north-east 13, and west half south-east 12, aforesaid, to appellant; and for general relief.

Miller filed his answer to the foregoing bill, and admits that on 25th October, 1848, when Burk informed him he had bought the land, and wished to sell part of it, he bought of Burk said east half south-east 12, for $175, on terms as stated in the bill, and entered into the contract stated in bill, and paid $30, and afterwards, on 2nd January, 1850, at Quincy, paid $31 more to Burk, and afterwards on 10th October, 1851, at Quincy, paid Burk $25 more.

Denies execution of contract between Burk and Schuyler and others. Denies Savage's authority to execute it. Insists that Burk, long before assignment to appellant, had forfeited all rights under said contract. That he had abandoned all claims under it, and appellant knew it. That believing that Burk had abandoned all claim, he had purchased said land of one Edward A. Savage, agent for said Schuyler and others, about March, 1853, for $533.26, and received a deed from them for said half section. Denies that he made any misrepresentations, etc. Denies that the contract between Burk and Schuyler and others, or any money paid thereon, formed any part of the consideration which he paid for said land. Denies that any money has ever been tendered to him, or to Schuyler and others.

Burk filed an answer, admitting allegations of bill.

At the April term, 1858, of said court, the bill was dismissed at appellant's cost, by WALKER, Judge.

On the hearing, complainant offered the deposition of *Amos Burk,* who testified that the said Miller wanted to purchase the said east half south-east 12, that witness was to go to Quincy, and buy the whole of south-east 12, of Charles A. Savage, then agent for it, was to give Miller a bond for a deed for said east half, according to bond that he got, and Miller was to pay half purchase money that he was to pay for whole quarter section. Miller paid him thirty dollars on the contract before he went to purchase the land. He was to buy in his own name. He bought the lands in his own name, of Charles A. Savage, as agent for Schuyler and others.

Paid the thirty dollars over to agent of Schuyler and others, as part of first payment. Miller approved of purchase after it was made. Miller and witness then executed contract. Miller and witness, in January following, went to Quincy together. Miller paid witness thirty-one dollars, which is endorsed on

contract with Burk, and witness paid fifty-six dollars, using the thirty-one dollars to make that amount, which was endorsed on contract with Savage. Also, at the same time an extension of the time was given upon balance of money then due, until 1st January, 1851.

On 10th October, 1851, witness paid at Quincy, on his bond, $75, using $20 that Miller had paid him on Miller's bond. Savage, the agent, then told witness that he would not force payments any faster than he was compelled by his principals; that he would give witness timely notice, so that he could raise the money, before he declared contract void. Went to Quincy in 1852, and learned of sale to Miller, and had a conversation with Savage about the matter; he informed witness that Miller had got a contract for both quarters, by agreeing to pay *balance* due on witness's contract. Witness then tendered Savage all the money due on witness's contract with Schuyler and others. On returning from Quincy, went to see Miller. " He said he had got me by the heels and meant to keep me there." A short time afterwards tendered Miller all the money due on contract except what would be due on east half. Then tendered him all the money that would be due on witness's contract with Schuyler and others; he would not receive it. On May 27th, 1853, assigned the original bond over to Daniel Chrisman, complainant. Miller occupied east half of south-east 12. Witness occupied the rest of the land now in dispute, being west half south-east 12, and north-east 13. We commenced improving about twelve months after we purchased. Miller has occupied said east half ever since, and witness the other pieces; and also for more than a year after his sale to Chrisman. Chrisman has since occupied it. I improved said west half south-east 12, and north-east 13. Improvements worth $500. Miller's improvements on east half worth $150. Schuyler and others, neither by themselves nor agent, ever declared contract void. Witness never, after the time on said contract was extended, received any letter from Schuyler and others, or their agent, until after Miller bought. The land was worth more when Miller bought than when witness bought.

On cross-examination witness stated that there was a written extension of time on his contract with Schuyler and others, dated January 2nd, 1850, and a verbal extension made on Oct. 10th, 1851, to continue until Savage, the agent of Schuyler and others, should notify witness. Chrisman was to pay witness $200 for his claim to land, and has paid all but $50.

Deposition of *A. E. Savage,* taken 16th January, 1857. Charles A. Savage, on the 25th October, 1848, was agent for Robert Schuyler and others, named, and is still their agent.

Charles A. Savage, as agent for Schuyler, sold land in dispute to A. S. Burk; there was a forfeit bond executed in usual form. $100 was paid on execution of contract; $56 on January 2nd, 1850; $75 on October 10th, 1851. There was an extension of time given on balance of what was due January, 1850, to Jan. 1st, 1851. Schuyler and others, afterwards, by their agents, sold said land to Daniel Miller, for $533.26, on 16th March, 1853,—$360 cash, $179.60 on 26th October, 1853. The balance due on Burk's contract, at time of sale, was $533.26. Miller had informed witness of his being interested in land, but not of extent of interest. Witness named the price above. Schuyler and others generally approved of the actions of C. A. Savage, as agent, and they received the consideration of sale, so far as paid by said Burk, for land in dispute.

Witness mailed letter at Quincy, directed to Burk, at Macomb, declaring a forfeiture; don't know whether Burk ever received it. Never gave Burk any other written notice; told him, in Macomb, in spring of 1852, that " I should declare it forfeit if he did not comply with the terms of said contract." Witness offered land for sale after 1st March, 1853, and sold it to Miller on the 16th of March, 1853.

The last installment on Burk's contract was not due on 16th March, 1853. The mailing of the letter to Burk, and the sale of land to Miller, were the only acts Savage did to declare contract forfeited.

*J. R. W. Hinchman* testified, that he remembers Miller being in the office of C. A. & A. E. Savage; wanted to purchase some land; Burk's name was mentioned in connection with it; he said that Burk never would pay for it, and unless he obtained title from Messrs. Savage, he feared he would never get any title. Said he had agreed to pay Burk some money on the land. He offered to pay what was due from Burk on land, anxious to secure it because it lay in front of his door.

Some time after this, Burk was in Savage's office, and stated that he was prepared to pay the balance due from him on the land.

*Charles A. Savage* testified, that at the time of the sale by my brother and myself, as agents of Schuyler and others, to Miller, spoken of in my former deposition, Miller stated that Burk would not be able to comply with the contract he had made with Schuyler and others.

The non-fulfillment, on Burk's part, of the performance of his contract, and secondly, from the fact that Miller created in our minds the impression that he was in possession of land under purchase from Burk, was what induced us to give the new contract to Miller, spoken of in my former deposition. We were

not in the habit of enforcing a forfeiture of such contracts, unless we were well satisfied that they would not be fulfilled ; that is, unless they had not been, and there was a prospect that they would not be fulfilled.   It was our practice to allow third parties to come in and fulfill these contracts by paying the balance due, when we would execute deeds to such third parties.   We confined ourselves in this matter, to those whom we supposed, or were satisfied had become interested as subsequent purchasers from those to whom we had originally sold.

Miller did not, when he purchased, inform us that Chrisman, or any one else, was in possession of any part of land claiming through Burk.   My impression is that after the sale to Miller, Burk offered to pay up the balance due on the contract, and that we declined receiving it, in consequence of having sold to Miller.   This was not long after the sale to Miller.   If we had been informed by Miller at the time of the sale to him, that David Chrisman, or any other person claiming by purchase from Burk under Burk's contract, was in possession of, or interested in a portion of said land, we would not have contracted to sell the whole of it to Miller, without affording Chrisman or such other person, so holding or claiming under said Burk's contract, an opportunity of protecting his or their purchase from Burk, by paying up the balance due on said contract.

Two or three times after October 10th, 1851, and before March 15th, 1853, C. A. Savage notified Burk, personally, that unless he paid up immediately, " *I should be obliged to declare it forfeited.*"   A letter was written which is herewith attached, marked " B."

On 16th March, 1853, A. E. Savage and myself sold the land, as agents for Schuyler and others, to Daniel Miller.

Miller, in 1853, offered to pay me the balance due on Burk's contract, which was $533.26.   I replied he could have the two quarters for balance due on Burk's contract.

Letter referred to as exhibit " B," dated February 1, 1853, states to Burk, " If you do not pay up on or before March 1st, next, we shall declare same forfeited, and the land shall be for sale."   Signed, C. A. & A. E. Savage.

On 1st February, 1853, we notified Burk by letter, that if he did not pay on or before 1st March, we should declare contract forfeited, and hold the land subject to sale.

*J. P. M. Buchanan* testified, that some time before this suit, Chrisman told witness he did not believe Burk would be able to pay for land; that Miller should never have it.   I told him that Miller had a contract for it.

Chrisman, on another occasion, told witness he knew that Burk's contract had expired.

Errors assigned: court erred in dismissing bill at complainant's costs; and not entering a decree in favor of appellant, for relief prayed for in bill.

CYRUS WALKER, and J. GRIMSHAW, for Appellant.

C. L. HIGBEE, for Appellees.

CATON, C. J. The case presented by this record is briefly this: On the 25th October, 1848, Burk entered into a written contract of purchase with Schuyler and others, of the half section of land in question, for $600.00; one hundred of which he paid down, and agreed to pay one hundred with interest on the first day of January, 1850, and one hundred dollars with interest on the first of each succeeding January, until the balance should be paid. The covenant to convey is made upon the express condition that the payments shall be promptly made, and time is in terms declared to be of the essence of the contract; and a subsequent clause of the contract declares that the parties of the first part, in case of failure by Burk to perform any of his covenants, "shall have the right to declare this contract void." In pursuance of a verbal understanding between Burk and Miller, existing before this purchase, Burk agreed to sell to Miller one eighty of the half section, with payments and conditions corresponding with those of the contract of purchase above stated; of which payments, thirty dollars were paid down by Miller. Miller took possession of his eighty, and Burk took possession of the balance of the half section. On the second of January, 1850, the day after the second payment of one hundred dollars and interest fell due, Burk paid to the agents of the parties of the first part fifty-six dollars, and the agents at that time, agreed to extend the balance of that payment till the first of January, 1851. No further payment was made by Burk till the 10th of October, 1851, when he paid seventy-five dollars on the contract. This was the last payment he ever made on that contract, and no extension of time was ever stipulated, except that which was stipulated on the second of January, 1850. Several times between the time of the last payment on the 10th of October, 1851, and the 15th of March, 1853, Burk was personally notified by the agents of the party of the first part, that unless he paid up immediately, they would be obliged to declare the contract forfeited, and on the first of February, 1853, the agents wrote to Burk: "if you do not pay up on or before March 1st, next, we shall declare same forfeited, and the land shall be for sale."

Miller was nearly as delinquent in his payments to Burk, as Burk was to Schuyler and others.

On the 27th of February, 1853, Burk assigned his interest in the contract to the complainant, Chrisman, who never made any payments on the contract; and on the 16th of March, 1853, the agents of Schuyler sold the land to Miller for $533.26; of which he paid down $360, and the balance on the 26th of October, following. In the mean time, Burk continued in the possession, use and occupation of the three eighties which he claimed, and made valuable improvements on the land; and after he heard of the purchase by Miller, he tendered the amount due on the contract to the agents of Schuyler and others, and also to Miller, and demanded a conveyance of the two hundred and forty acres to Chrisman, which was refused. At the time Miller purchased, he represented to the agents of whom he made the purchase, that Burk was unable to complete the payments, and that he had purchased of Burk a part of the land. This is in brief, the substance of the case, as we gather it from a very voluminous record, upon which the court below dismissed the bill; which is now assigned for error.

When once understood, this whole case is reduced to a very small compass.

Two principal questions present themselves in the consideration of this case, upon which the decision must principally depend:

First. Had the contract for the purchase of the land by Burk ceased to exist, so that he no longer had any legal or equitable rights under it, on the 16th of March, 1853, at the time of the purchase by Miller? And—

Second. Was the conduct or position of Miller such at the time of his purchase, as to make him the trustee of the assignee of Burk, and make Miller's purchase enure to the benefit of Chrisman?

It seems to us, that but one answer can be given to the first proposition.

It is conceded on all hands, that parties have a right to make their contracts as stringent as they please, and to make time of the very essence of their contracts; and if one party, without the consent of the other, allows the specified time to pass, no matter from what cause, without performing the condition, the stipulated consequences must follow. Here, by the express contract of the parties, time was made of the essence of the contract. The contract is, that if the payments should not be made at the stipulated time, then the purchaser's interest under the contract should cease. In all such cases, the mere

lapse of time, with non-performance, does not of itself obliterate the contract; so that neither party has any rights, and is subject to no liability under it as if it never had been. After the expiration of the time, and non-performance, the vendors had a right still to treat the contract as subsisting, and sue Burk on his covenants. The clause of forfeiture was put in for their benefit and their security, and did not release the purchaser from his covenants to pay, till the covenantees chose to avail themselves of that clause. Till then, the rights and liabilities remained the same as if no such clause was in the contract. *Mason* v. *Caldwell*, 5 Gilm. R. 196. So long as Schuyler and others reserved the right to sue Burk upon his covenants to pay, so long did the right subsist in Burk to tender the balance due, and demand a deed. After default by Burk, they had the right at any moment to declare the forfeiture; and thus deprive themselves of the right to sue on the covenants; and to deprive Burk of the right to claim a performance by them, nor was it incumbent on them to give notice to Burk of such determination. After his default he was entirely at their mercy. The mere act of offering the land for sale, or entering it in their sale-book, or any other act showing that they considered the contract as terminated, or treated it as terminated, was sufficient to put an end to it, and deprive Burk of the right to claim its performance; and them of the right to sue him upon his covenants contained in it. If we treat Miller as a stranger, then the mere act of selling to him was of itself a sufficient election by the vendors to seek their remedy by taking advantage of the forfeiture, and released their remedy on the covenants. Indeed such was the undoubted effect of the sale to Miller, no matter what his relations to Burk might be in reference to the land.

We will now consider for a moment what those relations were, and what influence they should exert upon the respective rights of Miller and Burk, or on the assignee of Burk in reference to the title acquired by Miller.

During the subsistence of that contract, both Miller and the assignee of Burk had a joint interest in it, the former to the extent of the eighty acres which he had purchased of Burk, and the latter to the extent of the remainder of the half section. We are inclined to the opinion that while this relation continued, while the contract subsisted in life, and each had an interest in it, neither could deal for the subject-matter of that contract, except for the joint benefit of both, in proportion to their respective interest in that subject-matter.

However this may be, we are of opinion that the agents of the vendors had terminated the contract by taking advantage of the clause of forfeiture before the purchase by Miller, so that

the contract at that time was a dead letter, and that neither had any rights under it, and that the relation of confidence between those who had the joint interests under the contract had become dissolved, and they had become as strangers, as to the subject-matter of the contract.

The Savages, the agents of Schuyler and others, on the first of February, 1853, addressed a letter to Burk on the subject, in which they said, "If you do not pay up on or before March 1st, next, we shall declare same forfeited, and the land shall be for sale." This letter, upon the expiration of the time specified, without the required payment, is evidence of the termination of the contract at the appointed time. Had they after that time, sued Burk on his covenant to pay the money, this letter of itself would have been sufficient to establish the defense that they had availed themselves of the right of forfeiture, and had thereby destroyed the contract. Indeed, the letter is something more than a mere threat. Its manifest object was to fix a time by the expiration of which, upon the non-performance by Burk, should of itself terminate the contract. Such, we say, was the manifest meaning of this letter, although in the form of a threat. But as it required no public act to determine the contract by the forfeiture, if we are to understand that letter as but a declaration of intention to terminate it at that time, in the event of non-payment, the fact that the payment was not made, in connection with the letter, would, in an action against Burk, be proof that they did terminate it at that time, unless notified before the first of March that they would not do as they said they would in the letter of the first of February. After the first day of March, Burk had a right to assume and to act as if the contract was terminated on that day, and that he was no longer liable upon his covenants to pay, and to make arrangements and contract other obligations upon that hypothesis. Burk swears that he never received that letter, nor was it important that he should. The other parties were under no obligation to notify him that they would forfeit, or that they had forfeited, at any time. The election to claim the forfeiture, instead of relying longer on the covenants, required no public parade to make it valid and binding on both parties. It might be made never so secret, and if but susceptible of proof, it would be obligatory. The facts stated in that letter might as well have been posted on their office door or entered in their journal, and when once established to have been thus stated, the same results would have followed, as follow the writing of that letter. It is true that the agents swear they would have taken the money of Burk at any time before they sold to Miller, but that would have been an

act of grace on their part. Their object was to realize the money which Burk had refused to pay, and for this purpose they again put the land into market, asking for it no more than the balance due from Burk. Of course then, they would take the same money from Burk which they were asking for the land from others. This circumstance, therefore, by no means shows that they had not put the land into market before Miller purchased. We think the fair conclusion, from all the evidence, is that the contract was determined on the first of March, 1853, and that after that time, neither party had any rights under it. When the rights of the parties under the contract ceased, the relations resulting from those rights ceased also. Thenceforth all of the parties, Miller, Burk, and Chrisman his assignee, ceased to have any interest in the land, either legal or equitable, and Miller had as much right to purchase as any third person,—as a total stranger to the transaction.

We are of opinion that the decree of the Circuit Court should be affirmed.

*Decree affirmed.*