## POTTER PALMER

*v.*

## ALVIN FORD.

1. FORFEITURE. Forfeitures are not regarded by courts with any special favor, and where a party insists upon a forfeiture, he must make clear proof, and show he is entitled to it. It is a harsh way of terminating contracts, and he who insists upon making a declaration of a for-

feiture, must be held strictly within the limits of the authority which gives the right.

2. Where a lease conferred upon a party a clear right to declare a forfeiture for non-payment of rent, if the power of declaring the forfeiture was properly exercised, a bill filed by the lessee against the lessor, seeking relief against such forfeiture, and to enjoin the lessor from prosecuting suits at law for the recovery of the possession of the leased premises, should not be entertained.

3. SAME—*notice.* A lessee of a lot of ground erected a building thereon, under the terms of the lease, for the purpose of renting the same to other tenants. The lessor reserved the right to declare a forfeiture of the lease for default in payment of the ground rent, as it should become due. Several instalments of rent became due, but the lessor, at the instance of the lessee, waived his privilege to declare a forfeiture, and did not press the lessee for payment for more than a year, other than in receiving rents from the tenants of the building, which had been provided for by agreement of the lessee. Moreover, negotiations had been going on for an adjustment of the matter of the ground rent, and the lessor had evinced a disposition to favor the lessee in that regard. It was *held*, that under these circumstances, notwithstanding the lessee had, by the terms of the lease, expressly waived the right to any notice of an intention on the part of the lessor to declare a forfeiture, yet he should have notice before such declaration could properly be made.

APPEAL from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. C. M. HARRIS, for the appellant.

Mr. H. T. STEELE, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This was a bill for an account and relief. In 1869, appellee took a lease of appellant for certain lots, in which an annual ground rent was reserved. The lease was to run for five years, with the privilege of renewal for a like period on the terms stated. It contained a clause authorizing the lessor, at his election, to declare a forfeiture for non-compliance with its provisions. It was intended, also, to provide, the lessee waived any right to notice of an intention to declare a forfeiture, but, by a clerical mistake, the lease reads, "the party

of the first part," the lessor, waives such notice. The context, however, conclusively shows it was the lessee that waived his right to notice.

It was the intention of the lessee, when he procured the lease, to erect buildings upon the premises, for rental purposes. Provision was made for the removal, at the termination of the tenancy. In pursuance of that purpose, appellee commenced to erect upon the premises a block consisting of three buildings, each three stories high. The ground floors were designed for store rooms, and the upper rooms for dwellings. Appellee was much embarrassed for want of means to finish the buildings, but, by the winter of 1870 and 1871, some of the rooms were so nearly completed they were occupied by tenants, and the lessee began to realize some income from them.

The material-men and carpenters were unpaid. An arrangement had been made with Winn and England, who had performed labor in the construction of the building, they might retain certain rooms and the rents accruing therefrom, until the amounts respectively due them should be discharged. They were, accordingly, let into possession.

No ground rent had been paid, unless $25 was paid at the execution of the lease, nor was any effort made by the lessor to declare a forfeiture prior to the 10th day of February, 1871. There was then due over $1200 for ground rents.

Appellant claims, on that day, the 10th day of February, by virtue of the power reserved, he elected to and did declare the lease forfeited for non-payment of rents, and caused his agent, Winchester Hall, to serve a notice on appellee of such declaration. It is also claimed the tenants occupying the premises, by the direction of appellee, attorned to appellant, and from thenceforward, Hall, as his agent, received the rents, as the same became due, from the several tenants. Appellee was then occupying a suit of rooms in the building, with his family, and it is said be became a tenant of appellant.

On the other hand, it is claimed no forfeiture of the lease was ever taken by the lessor. Appellee insists that, prior to the 10th of February, he made application to the agent, Hall, to collect the rents in reduction of the ground rents then due; that Hall said he would refer the matter to Mr. Palmer; that, at the next interview with him, he said he had seen Mr. Palmer, and it could be done. This was in December or January. Appellee claims it was in pursuance of that agreement, and none other, that he, on the 10th day of February, went around, with Hall, to the several tenants, and directed them, except Winn and England, thereafter to pay rent to Hall, as agent of appellant. It is also claimed appellee made an arrangement with appellant's agent, to complete the buildings for him, and whatever was expended in and about the work, should be reimbursed, either out of the rents or otherwise.

The evidence offered by the parties, in support of the respective positions assumed, is in direct conflict, and is totally irreconcilable. The only facts about which there does not seem to be any dispute, are, that the buildings were, in fact, completed by appellant, and that such rents as had been collected, were received by his agent. The amount of the receipts and expenditures is among the disputed facts.

Appellee continued on the premises, without paying any rent for the particular tenements occupied, as other tenants were required to do. On the 9th day of December, 1871, notice was served on him to quit that portion of the building in which he then resided. Actions had been commenced against several other parties occupying portions of the building under leases from appellee, to dispossess them. This bill was then filed to enjoin the further prosecution of those suits, and for account of receipts and disbursements on account of the property.

The right to relief is based on the ground there had been no forfeiture of the lease; that there had never been any surrender of the premises; that appellant had collected the

rents under a distinct agreement to apply the same in reduction of the ground rents due and to become due; that appellant would finish up the building for appellee, and, for his expenditure in that behalf, he was to be reimbursed, and because the amount of the receipts and expenditures is unknown, appellee prays an account shall be taken. Appellee offers, by his bill, to pay whatever shall be found to be due for disbursements, or for ground rents, and asks to be restored to full possession of the premises under the lease.

Appellant, in his answer, insists there was a distinct declaration of forfeiture of all the rights of the lessee, on the 10th day of February, 1871; that he voluntarily surrendered possession of the premises to Hall, as agent of appellant; that the building was afterwards finished for himself, and that appellee had no further interest therein, except as a tenant from month to month, at a reasonable rent.

The court, on the hearing, decreed relief, and, by an interlocutory order, directed appellee immediately to pay the amount that should be found due, to appellant, and, in default thereof, his bill should be dismissed. The court further decreed, on the payment thereof, appellant should surrender full possession of the premises to appellee. The cause was then referred to the master, to state the account between the parties on the basis of the interlocutory decree. On the coming in of the master's report, both parties filed exceptions, all of which were overruled, except the third, taken by appellant. The court found there was due him $1327.05, and decreed, upon the payment thereof, appellant should surrender the full and complete possession of the premises to appellee, that he might thenceforward hold the same under the lease of 16th of October, 1869.

Both parties are dissatisfied with the amount of the decree, but we are unable to detect any substantial error in the finding of the court. There is certainly no such error as can seriously affect the rights of either party. The only question

about which there is any difficulty, is, whether the court properly entertained the bill.

The lease conferred upon appellant the clear right to declare a forfeiture for the non-payment of rents, and if the power reserved was properly exercised, then the bill ought to have been dismissed; but if there was no declaration of forfeiture, and the contracts alleged, in regard to the collection of rents and the completion of the buildings, were made, then there were clear grounds for equitable relief.

As we have before remarked, the testimony on these vital points is totally irreconcilable. The court below was, no doubt, compelled to reject much that was testified to by the witnesses on either side, and must have relied upon the acts of the parties as affording the only solution of the case. We are inclined to agree with the court, that the facts which must be regarded as proven, considered in connection with the acts of the parties about which there can be no misunderstanding, are inconsistent with the theory advanced by appellant, viz: that there was a declaration of forfeiture of the lease, followed by a voluntary surrender of the premises.

There was clearly no effort to collect promptly the ground rent secured by the lease. The delay may have been, and doubtless was, for the benefit of appellee, and by reason of his importunities. It is certain, great indulgence was granted to him, which is conceded by the answer and abundantly established by the testimony of both parties. There was but little doubt it was done to enable appellee to extricate himself from the difficulties he had experienced in procuring the funds with which to complete the work he had undertaken.

It is claimed, the declaration of forfeiture was made on the 10th day of February, 1871. Previous to that time, no notice of an intention to declare a forfeiture had been given, unless it was by the casual remark of Hall, that, unless the ground rents were paid, he would have to declare a forfeiture. But it is not insisted any specific notice of such an intention was given.

Negotiations had been going on between the parties for an adjustment of the difficulty. The propositions of appellee had been so favorably received, that neither the lessor nor his agents had pressed him for the ground rents for more than a year, other than such as were received from the tenants of the building. It is said no notice under the lease was necessary, for the reason appellee had expressly waived his right to notice. It may be conceded such is the provision of the lease, but that fact would hardly excuse the want of notice, under the circumstances of this case.

Appellant had not elected to declare a forfeiture as the instalments of the rents severally became due, but had uniformly waived that privilege as favor to appellee, on his solicitation. No new instalment had become due, but, if a declaration of forfeiture was made, it was for all the previous unpaid rent. In the event the lessor had suddenly changed his purpose, to grant no further accommodation, good faith certainly required he should give some definite and specific notice of such change. Without any previous notice, other than the casual remark of the collecting agent, for it is conceded Hall had no specific directions from appellant, it is insisted Hall, on the 10th day of February, read to appellee a declaration of forfeiture; that appellee, without making the slightest objection to the sudden termination of all negotiations for further accommodations, immediately went round with the agent, and notified the tenants to pay rent to him, and agreed, himself, to become a tenant to appellant. This is the most singular fact in the case, yet it is positively sworn to by Hall, and equally as positively denied by appellee. It must be admitted there are some things in the record that tend to support the testimony of both witnesses. · So far as an appellate court can know, the witnesses on either side are of equal respectability, and we are unwilling to believe that any of them testified to anything they did not honestly believe, although they may have been mistaken in their recollections. The court below heard this conflicting testimony

in open court, from the several witnesses, and could better judge, than we, of the weight to be given to it. For that reason, we are inclined to attach weight to the finding of the court on the doubtful facts.

The only rational explanation that occurs to us, that can be given to the transaction, is that which is given by appellee, in his testimony, that, if a declaration of 'forfeiture was read to him, he did not understand it was done for the purpose of terminating his rights under the lease, but in furtherance of the arrangement he supposed he had made, to let Hall collect the rents and apply the same in reduction of the ground rents due the lessor. This is consistent with the acts of the parties. The proof shows appellee had expended between $3000 and $4000 upon the work. He had expended all he could, by any possibility, raise, and had incurred large liabilities in addition, and yet we are told, when this declaration of forfeiture was made, that would cut off all his rights to the entire property, and, as the agent suggested, would leave it questionable whether it would not bar the rights of parties having liens upon it, and pass the title of the whole property to his principal, he made no kind of objections, either on behalf of himself or of his creditors, but voluntarily surrendered the property. This seems to us most singular conduct. Besides, his whole subsequent conduct is irreconcilable with the idea he could have understood there was any declaration of forfeiture that would bar his rights under the lease. He still manifested the same interest in the enterprise as before. He continued to do all he could to advance the work, and his letter to appellant, of July, 1871, proves most conclusively he did not know then the agents of the lessor claimed there had been a forfeiture of the lease.

The interest of appellee in the premises, on the 10th of February, was worth many times the amount of ground rents then due the lessor. It was all the property appellee had or claimed to have, and it seems strange, indeed, if he heard the sudden and unexpected declaration that deprived him of it

in an instant, that he would utter no complaint or word of surprise, or make an effort to secure any portion. The witness Hall says he did neither, and manifested no concern, when he read him the declaration of forfeiture, but, without exacting any explanation, introduced him to the tenants, and assisted him to make memoranda showing when the rents would become due, and the amount each tenant was to pay. Unless we regard the theory, that Hall was simply to collect the rents and apply the same to the payment of ground rents due the lessor, as having been established by the evidence, there is nothing that affords any rational explanation of the conduct of appellee, both at the time and his subsequent dealings with the property. This we are inclined to do.

Forfeitures are not regarded by courts with any special favor. The party who insists upon a forfeiture, must make clear proof, and show he is entitled to make such declaration. It is a harsh way of terminating contracts, and not infrequently works great hardships, and he who insists upon making such declaration, can not complain if he is held to walk strictly within the limits of the authority which gives the right.

We think the decree of the court is sufficiently sustained by the evidence. There is not that clear and distinct evidence that a declaration of forfeiture was rightfully made, that the law undoubtedly requires.

This view will render it unnecessary to discuss other questions raised by counsel in their argument.

The decree will be affirmed.

*Decree affirmed.*