# Charles W. Kuhlmeyer et al., Executors, Appellees, v. George J. Butz et al., Appellants.

## Gen. No. 6,697.

1. Appeal and error, § 1662*—*when objection to incompetency of witness is waived.* When no objection is made to the incompetency of the witness in the trial court, such objection is waived and is not available on appeal.

2. Mortgages, § 244*—*when check is not invalid as payment of interest to mortgagee's executor.* That a mortgagor, in paying interest on the mortgage, makes the check payable to the mortgagee's widow, or bearer, governed by the fact that the income of the estate had been left to the widow for life, does not invalidate the check as a payment to the executors, who were to receive the payment as they had debts and expenses to pay from the estate.

3. Mortgages, § 249*—*what constitutes sufficient tender of interest.* Where it is shown that it has been the custom between a mortgagor and a mortgagee for several years for the mortgagor to pay the interest by leaving his check therfor at a certain bank for the mortgagee, such evidence is sufficient to show a verbal contract to pay the interest in such manner at such place, or at least to prevent the mortgagee from being permitted in equity to claim that a tender of succeeding interest at the same place and in the same manner was not a valid and sufficient tender, without his having first notified the mortgagor that he would no longer accept payment there and in that manner, and by depositing there a check on that bank for the amount of the interest, payable to the mortgagee's widow, or bearer, to meet which check he had on deposit there sufficient available funds, the mortgagor makes sufficient tender of the interest.

4. Mortgages, § 249*—*when valid tender of interest is made and kept good.* Where, pursuant to the custom practiced for several years between him and the mortgagee, the mortgagor leaves at a certain bank a check for the amount of the interest on the mortgage, payable to bearer, the mortgagee's executor who handles his business knowing of it, and at all times keeps on deposit sufficient money to cover it, there was a valid tender made and kept good which will prevent a court of equity from declaring due for nonpayment of such interest the note which the mortgage secures and the maintenance of a bill to foreclose the mortgage even for such interest.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number,

5. BILLS AND NOTES, § 240*—*executors not purchasers for value.* Executors to whom a note passes as a part of property of the estate are not purchasers thereof for value, but have no greater rights than the testator would if living.

6. FORFEITURES, § 7*—*when equity will enforce forfeiture.* Executors of a mortgagee who resort to a court of equity to procure the acceleration of a large note, which the mortgage secures, the payment of increased interest, a solicitor's fee and costs, are seeking to impose upon defendant mortgagor the equivalent of a forfeiture, and before it will be enforced by a court of equity, they must make out a clear case appealing to the principles of justice.

Appeal from the Circuit Court of Stephenson county; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in this court at the April term, 1919. Reversed and remanded with directions. Opinion filed October 14, 1919. Rehearing denied November 21, 1919. *Certiorari* denied by Supreme Court (making opinion final).

ALBERT H. MANUS and R. R. TIFFANY, for appellants.

BURRELL & JAMES, for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court.

On March 1, 1910, George J. Butz and his wife executed a purchase money mortgage upon a farm in Stephenson county, securing their three notes, each payable to the order of Simon Kuhlmeyer; one for $1,500, due 2 years after date with interest at 5 per cent per annum, one for $1,500, due 4 years after date with like interest, and one for $10,000, due 10 years after date with interest at 4½ per cent per annum. The mortgage made the interest payable annually, though the notes did not. The first and second notes were paid, and all interest prior to March 1, 1918, was paid on the $10,000 note. The mortgage contained a provision that if default in payment of any principal or interest continued for 30 days, said principal

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

and accrued interest should immediately become due and the mortgage might be foreclosed as if all said indebtedness had matured. Simon Kuhlmeyer died in December, 1917, and his three sons, Charles W., Samuel H. and Adam Kuhlmeyer, became executors of his will, and on April 11, 1918, they filed a bill in equity to foreclose said mortgage for the full amount of the principal and interest of said $10,000 note on the theory that one year's interest was due on March 1, 1918; that Butz and his wife were in default for nonpayment thereof; that said default had continued for 30 days, and that thereby they had acquired the right to foreclose for the full amount. Butz answered, denying nonpayment of interest, denying default, denying the right to foreclose, and also setting out his version of certain transactions concerning said interest. The cause was tried and there was a decree foreclosing the mortgage for the full amount of the note and interest and for costs and for $750 solicitor fees. This is an appeal from that decree.

The note was dated at Pearl City and was payable at Pearl City by its terms, but the place of payment in Pearl City was not stated. At first the interest was paid at the home of Simon Kuhlmeyer in Pearl City, but on March 1, 1915, 1916 and 1917, and possibly on March 1, 1914, the interest was regularly paid by Butz drawing a check payable to Simon Kuhlmeyer for $450, and leaving the same for Kuhlmeyer at the Pearl City Bank, and Kuhlmeyer sent his daughter to receive the check and to indorse payment of the interest on the back of the note. These facts are proved by the testimony of Butz, and it is suggested that he was incompetent to testify to those matters occurring in the lifetime of Simon Kuhlmeyer. Complainants made no such objection to his testimony. At one place in his testimony complainants' counsel said "I think his testimony is incompetent," but that was not an objection, and no ruling of the court was

asked or obtained. It frequently happens that counsel prefer to permit an incompetent witness to testify with the expectation of gaining some advantage there by, or thereby learn some fact which that party could not otherwise obtain. When no objection is made to the incompetency of the witness in the trial court, such objection is waived, and is not therefore available in a court of appeal. Jones on Evidence (2nd Ed.) secs. 780, 796.

Butz was competent as to all matters occurring after the death of Simon Kuhlmeyer. On the morning of March 1, 1918, Butz left at the Pearl City Bank a check for one year's interest, $450, payable to Mrs. Simon Kuhlmeyer, or bearer. The reason for inserting the name of Mrs. Simon Kuhlmeyer was that by the will of Simon Kuhlmeyer the income of the estate was given to her for her life. The language of the will was such, however, that it was the executors who were to receive the payment, as they had debts and expenses to pay from the estate, but that did not invalidate the check in any respect, for by section 9 of our Negotiable Instruments Law (J. & A. ¶ 7648), an instrument payable to a person named therein or bearer is payable to bearer. This check therefore was payable to bearer and was available to the executors. Butz had the money then on deposit in said bank subject to check to pay the amount of the check. Section 70 of said Negotiable Instruments Law (J. & A. ¶ 7710) provides, among other things, "if the instrument is by its terms payable at a special place and he (the person primarily liable) is able and willing to pay it there at maturity, such ability and willingness are equivalent to a tender of payment on his part." It was held in *Ebert v. Arends,* 190 Ill. 221, 230, that where the place of payment is omitted from a written contract, it may be shown by testimony that a place of payment was agreed upon by parole between the

parties.   This principle is followed and applied in *Saffer v. Lambert,* 111 Ill. App. 410, and in *Warnock v. Fleming,* 200 Ill. App. 22, and it is so held in other jurisdictions.   It must be held that the practice so regularly followed for several years between Butz and Simon Kuhlmeyer either was sufficient proof of a verbal contract to pay said interest in that manner at the Pearl City Bank, or at least that Simon Kuhlmeyer could not be permitted in equity to claim that a tender of succeeding interest at the same place and in the same manner was not a valid and sufficient tender without having first given notice to Butz that he would not any longer accept payment in that manner at that place.   In *Gunby v. Ingram,* 57 Wash. 97, 106 Pac. 495, 36 L. R. A. (N. S.) 232, where a similar question was presented, it was discussed as follows:

"A strictly good tender cannot be made by the offer of a check for the amount due.   But it is well established that the creditor may waive the character of the money which is tendered by raising no objection to the payment, for the reason that it is not the character of money or specie that is called for in the obligation, or by raising some other objection which would exclude the idea of objecting on that ground. Considering the fact, which is a matter of common knowledge, that probably 90 per cent of the business of the mercantile world is now done through the medium of checks, drafts, etc., instead of by the transfer of gold and silver coin, or even of any other species of legal tender, it would be a dangerous rule to announce, and one which could easily be turned into an engine of oppression, if the tender of a payment, especially where it involved the maturing of obligations which were not then due, could not be made by check, where no question was raised as to the value of the check tendered, and especially, as in this case, where it was shown that the former payments involved in this transaction had been made by checks which were not objected to by the creditor."

We are therefore of the opinion that when Butz de-

posited that check at that bank on March 1, 1918, for the amount of the interest, and had the money there to meet it, the check payable to bearer was a sufficient tender of the interest. The proof is that from that day until the trial that check remained there, and the executor who attended to this business knew it was there, and saw the check, and the money was always there to pay it. Under these circumstances, we are of opinion that a valid tender was made and kept good, and that a court of equity could not under such circumstances declare the principal of the note due 2 years before its maturity, nor could complainants maintain a bill to foreclose even for the interest.

Charles Kuhlmeyer, one of the executors. Butz the defendant, and Dow, assistant cashier of the bank, gave testimony as to what afterwards occurred. They do not entirely agree. The executor was inclined to combine as occurring at one time things which a subsequent examination showed necessarily occurred at different times. We have studied with care the evidence in the record and conclude that the real facts are as follows: The executor knew that the interest was to be paid at the bank. On the afternoon of March 1 he went to the bank to see if it was there. Dow handed him the check. He saw that it was payable to Mrs. Simon Kuhlmeyer. He handed it back to Dow, saying, "Leave it there. I don't want it." While Dow does not testify that he said anything more at that time, yet subsequent testimony of the executor shows that he thought this was not a legal check because payable to Mrs. Simon Kuhlmeyer. Butz left the village after depositing this check and did not return until after the bank was closed. He returned to the bank next day to see if the executor had got the interest, and, though Dow does not testify anything about a complaint by the executor of the form of the check, yet Butz testifies that Dow gave him to understand that the check was objected to because

payable to Mrs. Simon Kuhlmeyer. Thereupon Butz went to the place of business of the executor and asked him what was the matter with the check and proposed to return to the bank and change the check so as to make it payable to the Simon Kuhlmeyer estate. The executor told him he could do as he liked Butz asked him if he would accept it when so changed. He said he would have to see his lawyer. Butz returned to the bank and had the check changed so as to be payable to the Simon Kuhlmeyer estate. We are satisfied from the reading and comparison of all the evidence in the record itself that it was not until after that time that the executor conceived the idea that the check was not legal tender and that he was entitled to cash. There is testimony to the contrary, but our conclusion rests upon an examination of all the testimony. The objection which he originally made having been obviated, he could not afterwards make some other objection to the check. Moreover, in view of the course of dealing between Simon Kuhlmeyer and Butz we are of opinion that if Simon Kuhlmeyer had the right to change the arrangement, that change should have been indicated to Butz before March 1, 1918. It is to be remembered that the executors are not the purchasers of this note for value before maturity without notice. They paid nothing for the note. They stand in the shoes of Simon Kuhlmeyer and have no greater rights than he would have had if living. We hold the tender was sufficient and was kept good and the bill should have been dismissed.

The case is to be viewed in another light. The executors are resorting to a court of equity and are seeking to impose upon defendant what is equivalent to a forfeiture, the acceleration of a large note, so as to make it payable long before it matures by its terms, and to impose upon defendant interest at 5 per cent on the decree, instead of 4½ per cent on the note, and a $750 solicitor's fee, and the costs of suit. The law

does not favor forfeitures. A clear case appealing to the principles of justice must therefore be made out before a court of equity will enforce a forfeiture. *Springfield & N. E. Traction Co. v. Warrick,* 249 Ill. 470; *Jones & Dommersnas Co. v. Crary,* 234 Ill. 26; *Palmer v. Ford,* 70 Ill. 369. Such a case has not been shown here. The decree therefore will be reversed and the cause remanded with directions to dismiss the bill for want of equity at the costs of the complainant, to be paid in due course of administration. A like judgment for costs will be entered against appellees here.

*Reversed and remanded with directions.*