Clark-Devon Building Corporation et al., Appellees, v. Anna Hinrichs et al., Appellants and Mortimer E. Berman et al., Appellees.

Gen. No. 41,209.

Opinion filed January 20, 1941.

ALDEN, LATHAM & YOUNG, of Chicago, for certain appellant; WM. TRACY ALDEN and HUBERT VAN HOOK, of Chicago, of counsel.

WALTER F. CUNNINGHAM, of Chicago, for certain other appellant; NORMAN A. KORFIST, of Chicago, of counsel.

WILHARTZ & HIRSCH, of Chicago, for appellee Clark-Devon Building Corporation; JULIAN H. LEVI and J. S. GREENBERG, both of Chicago, of counsel.

Mr. Justice Matchett delivered the opinion of the court.

The defendants, heirs at law of Sivert Hollesen, who on July 1, 1918, demised premises in Chicago for a term of 99 years to Alexander Newton, appeal from a decree entered December 12, 1939, in favor of plaintiff (owner of the leasehold through mesne assignments) enjoining upon conditions named in the decree the forfeiture of its leasehold. Sivert Hollesen died May 31, 1931. May 8, 1932, defendants served notice of intention to forfeit unless alleged default was removed within 90 days. Plaintiff filed this suit August 8, 1932. The cause was heard on exceptions of defendants to report of a master. The exceptions were overruled and a decree entered as recommended. Defendants with a single exception (the Berman issue, so called) have waived all issues of fact.

The lease provided for the payment of rent for the first period of 5 years at $8,000 per annum; for the second like period, $9,000 per annum; for a third like period, $9,500, and for the remainder of the term, $10,000 per annum. The property was the northeast corner of North Clark street and Devon avenue. At the time of the demise it consisted of a frontage of 222 feet, 5¾ inches on Devon avenue, 191 feet on North Clark street, and 165 feet, 3⅞ inches on Schreiber avenue. The depth of the east line of the premises was 260 feet. Substantially it consisted of lots 3, 4 and 5 in the subdivision described in the lease and consisted of a total area of 57,122.55 square feet.

By the terms of the lease the tenant agreed to erect and maintain two buildings on the Devon avenue frontage, the "east" building to cost not less than $70,000 to be used as a theater, stores, apartments, etc., and the "west" building to cost not less than $13,500 to be adapted to the same uses except the theater. The buildings were erected. The lease provided that all buildings erected should be considered an integral por-

tion of the real estate and at the expiration of the lease would become the property of the lessor.

May 15, 1929, the city of Chicago brought condemnation proceedings to widen Ashland avenue by taking part of this property, and February 5, 1930, obtained an order taking all of lot 3 and a substantial portion of lot 4. It took 19,229.22 of the total 57,122.55 square feet, constituting the demised premises. The original frontage on Devon avenue was thereby reduced to 146 feet, 8⅝ inches. The compensation for the property taken was $330,000, which was divided between the lessor and the lessee according to the terms of the lease. Sivert Hollesen received $195,700, the value of the land as found, and plaintiff $134,300, the value of the improvements as found. The city required the "west" building to be removed without cost to it, free of mechanics' liens, and plaintiff removed it. There was a provision in the lease that in case of condemnation the amount of rent reserved to the lessor should abate each year to the extent of 4 per cent of the award received by him. This abatement amounted to $7,828 for the remaining years of the term. From September 6, 1930, until July 1, 1933, the rent was accordingly reduced from $8,000 per year to about $172 per year, and after July 1, 1933, the rent of the term would average about $2,080 per year instead of $10,000 per year.

In September, 1930, plaintiff began the demolishing of the three-story Hollesen or "west" building. The other part of the structure was removed to the vacant Schreiber avenue frontage and remodeled into a three-story brick apartment building, which was opened for use April 15, 1931, and has been since used for that purpose. This was done at a cost to plaintiff of $85,371.85. The value of this building at the time of the hearing was $49,500, exclusive of land or leasehold.

May 31, 1931, plaintiff began the erection of a new building on Devon avenue. It completed the foundation in November at a cost of $27,787.11. The lease did not require the erection of the building of Schreiber avenue but it did require in article 7 that in case of the destruction of any building or buildings the lessee would rebuild a building of the same general character, and at least of equal value, "provided, however, that . . . the lessee may erect a new building of not less value than the building or buildings so . . . destroyed, and in no event less than the estimated values of such building or buildings, said estimated values of the buildings . . . first to be placed on said premises being as follows, to wit: . . . $13,500.00 for the west building and $75,000.00 for the east building."

Sivert Hollesen had knowledge of the tearing down of the "west" building and of the moving of it to the Schreiber avenue frontage, and the master finds he approved. Hollesen never demanded the completion of the building to be erected on Devon avenue and never stated or indicated in any way that he wished to forfeit the lease. All rentals due were paid to him during his lifetime and all rentals were paid up to the time of the service of the notice of intention to forfeit on May 8, 1932. Article 7 provided that the reconstruction of any building made under its terms should be "within 12 months after any such destruction, loss or damage," or as much sooner as it could reasonably be done.

The master found there was a default in the reconstruction of this building and that the same was not wilful but excusable for the reason that it was impractical if not impossible to do so because of the condition of Ashland avenue, notwithstanding diligent efforts on the part of plaintiff to secure the improvement of that street; that on that account while it was physically possible to bring materials in to rebuild, it would not

have been "economically possible." The State finally took charge of and completed the improvement of Ashland avenue but not until 1935. The master found that in the condition in which the street was it would have been impossible to have rented to tenants if the building had been constructed, and that neither hardship nor damage resulted to the lessors in that respect up to May 8, 1932, or at any subsequent time.

At the time plaintiff obtained the leasehold there was a mortgage on it with an unpaid balance of $60,000 and interest, all of which plaintiff paid out of its own funds. It expended the sum of $85,371.85 in moving and remodeling the building on Schreiber avenue. It expended $27,787.11 in erecting a foundation for a new "west" building. The master found that under all the circumstances it would be a wrong and injustice to plaintiff to have its lease forfeited.

October 26, 1935, Anna Hinrichs filed another notice of intention to forfeit (without withdrawing the notice of May 8, 1932) for alleged defaults in allowing alleged mechanics' liens to attach to the property and for failure to pay taxes, assessments, etc., as required by the lease. July 30, 1936, plaintiff tendered in open court $62,783.18 to provide for the payment of delinquent taxes (having on January 15, 1936, notified Mrs. Hinrichs that it would pay the same and erect the "west" building if she would withdraw the first notice of forfeiture). The decree finds the alleged mechanics' liens did not exist. It requires plaintiff to deposit with the clerk of the court $75,865.03, to cover the amount due for taxes, special assessments, penalties, etc., and rent up to November 15, 1935.

There could be no forfeiture under the notice of Mrs. Hinrichs for several reasons. In the first place she owned at the time of giving notice only 1/9 interest in the premises, and she could not forfeit the lease for her cotenants. *Howard v. Manning,* 79 Okla. 165, 192 Pac. 358, 12 A.L.R. 819. Moreover, the notice was

abortive since the mechanics' liens were found not to exist in fact. The decision of the case therefore turns on the validity of the first notice of forfeiture given on May 8, 1932.

Defendants say equity will not relieve against a forfeiture for breach of covenant to repair or rebuild, where the breach is not compensable in money, is wilful and is not the result of fraud, accident or mistake. Defendants further say equity will always recognize a valid declaration of forfeiture and in support cite such cases as *Chrisman v. Miller,* 21 Ill. 227, where it was held that a default in a covenant to pay consideration precluded a bill for specific performance of the contract; *Fisher v. Smith,* 48 Ill. 184, and *Leary v. Pattison,* 66 Ill. 203, where forfeitures for nonpayment of rent were sustained; *Kew v. Trainor,* 150 Ill. 150, where the breach of a covenant not to assign was held to justify a forfeiture; *City of Belleville v. Citizens' Horse Ry. Co.,* 152 Ill. 171, where rights of a railway under a city ordinance were forfeited for failure to comply with conditions upon which the rights were granted; *Gunning v. Sorg,* 214 Ill. 616, where the court declared a lease forfeited for nonpayment of rent; and *Lang v. Hedenberg,* 277 Ill. 368, where at the suit of the vendor the vendee, who had failed to pay the balance of the purchase price under his contract, was enjoined from setting up any rights in the land.

While illustrating general principles these cases give little help in solving the actual questions presented for consideration by the record. The leading English cases of *Hill v. Barclay,* 18 Ves. 56; *Bracebridge v. Buckley,* 2 Price 200, and similar cases which seem to disapprove of *Hack v. Leonard,* 9 Mod. 91, are directly in point. In the *Hill* case the court distinguished between nonperformance of a covenant to pay rent and other covenants, and in *Sanders v. Pope,* 12 Ves. 282, the court questioned the right of a court of equity to interfere with the contract as made by the

parties. The grounds of these cases seem to be that it is impossible for the court in such cases to ascertain just compensation. The obscure origin of the jurisdiction of the chancery court with reference to relief from penalties and forfeitures is discussed in Story's Equity Jurisprudence, Vol. 3, ch. 37, §§ 1713–1741. Section 1728 of this chapter is quoted with approval by the Supreme Court of Illinois in the case of *Illinois Merchants Trust Co. v. Harvey,* 335 Ill. 284, where the court said:

"The basis of the relief is that the defendant is seeking to exercise a right which he has but which he should not be permitted to exercise."

The opinion points out that,

"In this State and elsewhere forfeitures are not regarded with favor, and where the right of forfeiture is, as in this instance, an additional security for rent, its prevention is within the protecting care of equity whenever wrong or injury will result from its enforcement."

In *Springfield & Northeastern Traction Co. v. Warrick,* 249 Ill. 470, where a bill was filed to secure an injunction against the prosecution of ejectment based on a forfeiture clause in the deed, the Supreme Court said:

"We are disposed to hold that the estate created by the conveyance was upon a condition subsequent, and the appellants must have so regarded it when they declared a forfeiture and brought the ejectment suit. If the conditions in the deed were covenants it would not have entitled them to a re-entry upon the land, but they would have had a right of action for damages for a breach of covenants. (*Post v. Weil,* 5 L. R. A. 422, and note; 2 Elliott on Railroads, sec. 945; 6 Am. & Eng. Ency. of Law, —2d ed. —503.) Forfeitures will be enforced by courts in clear cases, but they are not regarded with favor, and their prevention is within the protecting care of equity whenever wrong or in-

justice will result from their enforcement. (*Palmer v. Ford,* 70 Ill. 369; *Mott v. Danville Seminary,* 129 id. 403; *Voris v. Renshaw,* 49 id. 425; *Zempel v. Hughes,* 235 id. 424.)''

It is true these cases are distinguishable from the record before us. However, in *Mayer v. Collins,* 263 Ill. App. 219, this court had before it a case we think much in point. In that case the complainant was the lessee of defendant under a 99-year lease expiring in 1991 and filed his bill for an injunction against forfeiting the lease. A preliminary injunction was granted and the defendant appealed to this court. The premises were 57–59 West Randolph street in Chicago, improved with a four-story building erected shortly after the Chicago fire. While the appeal was interlocutory the briefs went to the merits of the controversy and counsel were agreed that the decision in the case would determine the merits of it. The complainant had made a sublease which by its terms obligated the lessee to expend not less than $60,000 in improving, repairing and remodeling the building, to be completed by November 1, 1931. Complainant had been advised by competent architects and engineers that the only portion of the building having any value were the side walls; that reconstruction of the building piecemeal was not practical, and that unless complainant was permitted to erect a new building he would not be able to comply with the terms of the lease, which required him to maintain upon the premises a building worth not less than $35,000. Complainant wrote defendant that the improvement would give as security for rents a building in first class condition and worth at least $60,000 instead of the $35,000 building called for by the lease, and offered ample security as a guarantee for the payment of rent, etc., and for the performance of the covenants of the lease. Defendant examined the plans and specifications and rejected the offer, stating he would not give his consent. The alterations

were begun June 1, 1931, and while in progress defendant served notice on complainant that the building had been wholly destroyed and demolished contrary to the terms of the lease, and that defendant had elected to terminate the lease and gave him notice to quit the premises and deliver up possession. Whereupon, the complainant filed his bill. This court said a reading of the bill showed equitable consideration which would not be available to the complainant in an action at law, and said:

"It is a well recognized principle that it does not follow that, because a remedy at law is afforded in a case, equity will not also take jurisdiction of the same state of facts. If the remedy in equity is more adequate because of special circumstances in the . . . situation, the jurisdiction of equity will be sustained. We cannot agree with the proposition advanced by defendant that a court of equity will not grant relief from the forfeiture of a lease for a cause other than the nonpayment of money in the absence of fraud, etc. In *Illinois Merchants Trust Co. v. Harvey*, 335 Ill. 284, it was argued that because of certain sections of the Landlord and Tenant Act, Cahill's St. ch. 80, equity could not enjoin a threatened forfeiture. The Supreme Court did not agree with this, saying: 'The source of the right in the landlord to declare a forfeiture is not important. We are unable to see any difference between a right given by statute and one arising from any other source. The basis of the relief is that the defendant is seeking to exercise a right which he has but which he should not be permitted to exercise.' "

The order allowing the injunction was affirmed.

It would unduly extend this opinion to undertake to review and distinguish all the cases cited in the briefs filed in this case, which are full and complete. The subject is a difficult one. The Illinois courts have never approved the reasoning in the English cases on which defendants rely. Indeed, general rules are of little

value in considering this class of cases. The English decisions seem to distinguish between cases where the covenant is by way of further security for the rent, but we think the distinction is one difficult to sustain. The master found that this covenant was for further security and the lease itself so states. Under this state of facts it is difficult to distinguish between rent and the security for it.

The facts that Hollesen, who was a frequent visitor to the premises in his lifetime, made no protest against the manner in which plaintiff was fulfilling its covenants; that he received full compensation as provided in the lease for all injuries sustained by him through the condemnation proceedings; that the defendant heirs so far as the records show made no complaint up to the time of filing the notice of intention to forfeit; the undoubted value of plaintiff's equity in the property, these are all circumstances which make it impossible for a court of equity to refuse relief. We hold the decree was just, and it will be affirmed.

*Decree affirmed.*

O'CONNOR, P. J., and McSURELY, J., concur.