NORTH JERSEY STREET RAILWAY COMPANY

*v.*

THE INHABITANTS OF THE TOWNSHIP OF SOUTH ORANGE.

[Submitted March 24th, 1899. Decided April 14th, 1899. Filed September 26th, 1899.]

1. Though a township ordinance granting powers and franchises to a street railway corporation provides that the township may adjudge a breach of duties and obligations and declare a forfeiture, an order passed pursuant thereto, declaring a forfeiture and decreeing a sale of the corporate property, is judicial in its character, and equity has the same power to intervene and modify the proceeding as it would have to interfere in a proceeding in a court of law.

2. When a judicial act is in any particular contrary to the principles of equity, the fact that there may be a remedy at law on other grounds is not generally a sufficient reason to prevent equity from interposing its appropriate remedy on grounds not available at law.

3. Where a street railway corporation has expended large sums of money and exercised due diligence in building and operating its road, so as to comply with an ordinance of permission, but unforeseen circumstances have caused a delay, which has occasioned no pecuniary injury to the township or its inhabitants, equity will interfere to restrain the adoption of an ordinance by the township declaring a forfeiture of the franchise of the corporation because it did not comply with the statute of permission, which provided that cars should be running at a certain headway, on a continuous line of double track, within a specified time.

---

Order to show cause why an injunction should not issue. Heard on bill and affidavits, and answer and affidavits.

*Mr. Chandler W. Riker* and *Mr. Halsey M. Barrett*, for the complainant.

*Mr. Frank H. Sommer*, for the defendant.

PITNEY, V. C.

The object of the bill is to restrain the defendant corporation, the township of South Orange, in the county of Essex, by its township committee, from adopting an ordinance, under consideration by it, declaring forfeited and ended the rights, powers and privileges, and every of them, of the complainant, the North Jersey Street Railway Company, acquired under a previous ordinance of the defendant, adopted April 3d, 1896, authorizing and empowering the construction, operation and maintenance of a street railway along Springfield avenue, in said township, and providing for the sale of the line of railway previously constructed under said ordinance.

The proposed ordinance recites various matters in which the complainant corporation has, as alleged, failed to fulfill and perform certain conditions contained in the original ordinance granting the privilege of laying and maintaining and operating its railway, and proceeds:

"Inasmuch, therefore, as the said North Jersey Street Railway Company has not complied with the duties and obligations imposed upon them by the said provisions of said ordinance, therefore be it ordained by the township committee of the township of South Orange, in the county of Essex:

"Sec. 1. That all the rights, powers, privileges, and every of them, of the said North Jersey Street Railway Company, under and by virtue of said ordinance entitled 'An ordinance locating the tracks of the North Jersey Street Railway Company (a corporation incorporated under the laws of the State of New Jersey) on Springfield avenue, within the township of South Orange, in the county of Essex, and authorizing and empowering the construction, operating and maintenance of the same and granting permission for said company to use electricity as the propelling power of its cars and prescribing the terms and conditions upon which such location of tracks and permission are granted,' passed April 3d, 1896, be and the same are, for the causes aforesaid, hereby declared to be determined and at an end.

"Sec. 2. That the said line of railway be sold at auction to the highest bidder, under and by virtue of the provisions of said ordinance."

It is objected *in limine,* by the defendant, that this ordinance is an act of legislation by the defendant corporation through its township committee, and for that reason this court will not enjoin its adoption.

It may be conceded, for present purposes, that if the proposed ordinance is really and truly legislative in its character this court will not enjoin it.

Chancellor Zabriskie did, indeed, enjoin a somewhat similar ordinance in the case of *Paterson and Passaic Horse Railway Co.* v. *Mayor and Aldermen of the City of Paterson, 9 C. E. Gr. 158,* but his action in that case was criticised and not followed by Vice-Chancellor Van Fleet in the case of *Cape May and Schellenger's Landing Railroad Co.* v. *City of Cape May, 8 Stew. Eq. 419,* and he distinguishes the decision in the *Paterson Case* on the circumstance that Chancellor Zabriskie rested it upon the ground that the purpose and intention of the municipal authorities of the city of Paterson in passing the ordinance there enjoined, was to immediately tear up the complainant's tracks, and the learned vice-chancellor found that there was no such intention manifested in the *Cape May Case.*

I am unable to reconcile the two cases on that distinction. But they may be reconciled if the result of Chancellor Zabriskie's decision was simply to enjoin the municipal authorities from disturbing the tracks.

But I think that the *Cape May Railway Case,* and all the numerous authorities cited by the counsel of defendant in support of his position, are clearly distinguishable from the case in hand. Those authorities are aimed at the right of courts of equity to enjoin a municipal body from adopting ordinances legislative and discretionary in their character. In his argument counsel of defendant cited largely from the opinion of Mr. Justice Harlan in the supreme court of the United States, in *New Orleans Waterworks Co.* v. *New Orleans, 164 U. S. 471,* where I find that learned judge frequently designated the ordinances which are free from judicial control as being those which are " legislative in their character."

Now, all ordinances are not necessarily legislative in their

character. They are legislative in their character only when they prescribe a rule of civil conduct, or alter or repeal a previous ordinance of that character. That, in my judgment, is the test of a truly legislative act. Does it prescribe, alter or repeal a rule of civil conduct?

Now, legislative bodies may pass acts or adopt ordinances which are not legislative in their character, and legislative bodies that are not restrained by constitutional limitations in that respect may pass valid acts which are strictly judicial in their character. The parliament of Great Britain has that power, though it seldom exercises it at this day. Because it has that power it is called a court. The legislature of New Jersey, before the adoption of the constitution of 1844, in some instances exercised judicial powers. If it should to-day declare that a certain class of contracts shall be held and adjudged to be void, that would be a legislative act, because it would prescribe a rule of civil conduct. But if it should enact that a certain contract made on a certain day, between A of the one part and B of the other part, was absolutely void *ab initio* or had become so by subsequent events, that would not be a legislative act, but a judicial act.

There are other ordinances which are executive in their character rather than either legislative or judicial—such as grants of franchises and the revocation and repeal of such grants. Such, in my judgment, was the character of the ordinances in the Paterson and Cape May cases just referred to.

In the present instance, the proposed ordinance has none of the qualities of a legislative or of a discretionary act. It does not assume or pretend to prescribe a rule of civil conduct or to revoke or repeal a previous grant, but it is wholly and entirely judicial in its character. It ascertains and finds certain facts, which are recited. It then proceeds to declare that, as the result and by the force of those facts, the rights and franchises vested in the complainant corporation by the previous ordinances are at an end, and to decree that its property shall be sold at auction; but it does not say by whom, or upon what terms, or what notice shall be given, or what shall be done with the proceeds of the sale. Still, notwithstanding what would be considered radical

North Jersey Street Ry. Co. v. South Orange.

defects in a decree for sale made by a court of equity, it is, after all, a decree for sale.

I conclude, therefore, that it is, in effect, a judicial proceeding and decree.

But it is claimed by the defendant that the right of the township committee to take such proceeding was reserved by the original ordinance granting to the complainant the franchise to maintain and operate its street railway, and that such reservation goes so far as to allow it to be the judge in its own cause.

Now, for present purposes, admitting this to be so, and that the defendant corporation by its township committee is fully authorized to act judicially upon the subject-matter and to render a decree such as it proposes to render, and to execute that decree, it still follows that a court of equity has the same power to interfere in the conduct of that judicial proceeding as it would if it were conducted in a court of law. And this position is clearly sound, notwithstanding the fact that it may be supposed that the ordinance in question will not stand the test of a writ of *certiorari;* for it is perfectly well settled that if the action of the judicial jurisdiction is in any particular contrary to the principles of equity to such an extent as to induce a court of equity to intervene and arrest or modify the proceeding, the fact that there may be a remedy at law on other grounds is not generally a sufficient reason to induce a court of equity to withhold its appropriate preventive remedy based on grounds not available at law.

The first ground urged against the ordinance is that, being judicial in its character, no opportunity for a contest or trial has been given. There has been no judicial examination of the facts, according to the course of the common law, after notice to the complainant, where the witnesses could be produced and examined and the complainant given an opportunity to examine and cross-examine, to produce witnesses on its side, and to be heard either in person or by counsel. It is true that after this ordinance was prepared and introduced, and, I think, after it had passed one reading, notice was given to the complainant that it was being acted upon. But it is urged by the counsel for

complainant that this was not sufficient; that there should have been a judicial proceeding as near as might be to the course of the common law. This seems to me to raise a serious question well worthy of the consideration of a court of review, but whether it is within the jurisdiction of a court of equity may be open to question, and I do not find it necessary to consider it at present.

The next point made by the complainant is that there has been no substantial failure to fulfill the terms of the ordinance, but that the complainant has fulfilled the terms as far as practicable under the circumstances, and that no injury has been suffered by the township or its inhabitants at large by reason of such partial failure as there may have been in the performance; and it contends that, granting a failure, this is a case where equity ought to relieve from the effect of it.

The complainant is the proprietor of divers street railways operating in the city of Newark, and thence to the several suburban towns and cities near thereto. Among others, it has had for several years past a line running to the suburban town or village of South Orange, which is situate in the northern part of the township of South Orange. In 1896 it projected a route running in the same westerly direction, but south of the line just mentioned, along Springfield avenue, which leads to the towns of Springfield and Millburn, and crosses the southern part of the territory of the township of South Orange for a distance of about two miles. That avenue, after leaving the limits of the city of Newark, passes through first the township of Clinton, next the southern part of the township of South Orange, as we have seen, and next the township of Millburn. The road had already been built to the village of Irvington, in the township of Clinton. That village of Irvington had a separate municipal existence of such a character that it was necessary, under the law, for the complainant to get the permission as well of the municipal authorities of that village as of the township of Clinton, before it could reach the township of South Orange. It obtained the permission of the township of Clinton and that of the township of South Orange before it obtained the permission of the village

of Irvington. It was fully expected, however, when the South Orange permission was given, that complainant would soon be able to procure the permission of Irvington. It must have been perfectly well understood by the committee of South Orange that until permission to construct the line was obtained from Irvington, a continuous line from the portion of the territory of South Orange through which it would pass could not be constructed to Newark. A short break or hiatus of about one mile interposed between the westerly terminus of the road in the village of Irvington and the township line between South Orange and Clinton. The portion of South Orange through which Springfield avenue passes is sparsely populated and furnishes very little local travel. The whole project was in advance of the real wants and needs of that community or of the towns west of it, and was somewhat experimental in its nature.

A period of time was fixed within which the road should be built and operated. One extension of that period was given, namely, to April, 1897, and the road within the township of South Orange was built within that time and a connection made with a wire from complainant's road to South Orange, so that the electrical current could be maintained in that part of Springfield avenue which was in the territorial limits of South Orange without passing through the village of Irvington. Cars were put upon the tracks and they were operated.

In the meantime efforts were made to procure the consent of the village of Irvington, which failed, and the complainant was disappointed in procuring such consent. Still, it operated its road and has continued to operate it ever since the month of April, 1897, but without any connection with the main line in the city of Newark. Such an operation could, of course, be satisfactory to nobody. The local travel upon the road was small in volume and value and naturally did not increase, because persons desiring to reach Newark were obliged to alight when they reached the limits of the village of Irvington and walk a considerable distance to reach the western terminus of the Newark line. At first a stage line was put on and maintained by the complainant to cross the hiatus. This was abandoned

because the number of passengers was not compensatory.   Finally, after complaint was made to the complainant by the township authorities of South Orange, the stage line was restored.

Then the ordinance of permission required that the cars should be run under a headway of twenty minutes and should be continued up to midnight.   This part of the ordinance was not complied with for the reason, as stated by the complainant, that the business of the road did not warrant it.

Then, although a double track was laid, only one track was used, the whole length being only about two miles.   The reason for this undoubtedly was that the travel did not warrant the expense of maintaining either the current of electricity over both tracks or of the running of two cars.

The complainant alleges that it made reasonable efforts to procure the consent of the municipal authorities of Irvington, and was unable to do so up to the time of the filing of the bill.   At the argument it was stated and admitted that such consent was now obtained.

The principal grounds on which the forfeiture was claimed are—*first*, that cars had been run on one track instead of two; *second*, that the cars had not been run under a headway equal to that required by the ordinance, and *third*, that the company has not completed the construction of its road from Irvington, thus making a continuous line from the township to the city of Newark.

A careful reading of the original ordinance shows it to be a debatable question whether or not there was any enforceable condition in the ordinance that the road should be built and cars run outside of the limits of the township of South Orange in such manner as to make an unbroken line to the city of Newark.

The same may be said of the alleged condition that cars should be run on both tracks at the same time.   I think that is a debatable question under the original ordinance.

With regard to all these breaches I am satisfied that the complainant is not chargeable with laches in its efforts to complete its connection and finish the proposed new line of street railway. It has the pecuniary means to do so, and having, in the first

place, expended $5,000 in paying the board of freeholders for the privilege of laying its track on Springfield avenue, in South Orange township, which is in a sense the property of the board of freeholders, and, in the next place, large sums in actually laying the road and paving between each side of the tracks and erecting poles and wires, it had every inducement to finish the work as soon as practicable, so as to obtain a revenue upon its investment. It is not stated clearly just what the difficulty was in procuring the consent of the village of Irvington. Neither side has given any specific information on that subject. It is easy to imagine that terms and conditions were imposed by the municipal authorities of that village which the complainant considered too burdensome or that other difficulties of a temporary nature arose. It was stated, either in the affidavits or at the argument, that a change was made in the form of the municipal government pending the negotiations for the right of way. Be that as it may, I think it is fair to infer that the delay was such as alert but prudent business men could not well avoid.

Now, under these circumstances, the question at the hearing will be whether it is equitable and just for the defendant to exercise its power to put an end to the complainant's rights in Springfield avenue within the limits of its territorial jurisdiction.

Relief against penalties and forfeitures is a favored jurisdiction of a court of equity, and it rests upon the ground that it is contrary to the first principles of justice for one party to exercise a legal right which it holds against another party where the result is to obtain from that party a large sum of money as compensation for injuries which are manifestly much less than the amount exacted. The same principle should apply, as it seems to me, to the destruction of property where such destruction is of little or no benefit to the party having the right of destruction but will be a great injury to the other party. It is not in every case of forfeiture that courts of equity intervene. There is a class of cases comprising mercantile contracts where the exigencies of business and trade require that a party having paid a sum of money on a particular account and agreeing to pay a further sum on a certain day on the same account, and

failing to pay such sum, should lose what he has already paid. There is a class of business transactions in the community that could not be conducted to advantage without the enforcement of such forfeitures. But those cases stand upon their own peculiar grounds.

In all cases of forfeiture the purpose and object of the right of forfeiture are always taken into consideration. Here, prior to the intervention of the complainant, there was no railway in Springfield avenue. The complainant proposed to build one. Whatever it did in that way would be an addition to the traveling facilities of the neighborhoods reached by that avenue. So its work was one of construction and not of destruction; of addition, not of substitution. The object of the forfeiture provision was to insure good faith and prompt action on the part of the complainant in prosecuting its work, and if time was of the essence of the contract it was only so in a modified sense. The case differs in that respect from ordinary contracts of sale of real estate where a man agrees to part with property at a certain time and upon certain conditions. He is not obliged to vary those conditions either as to time or in any respect. But here, if the condition had been that the road should be finished, connected with the city of Newark and a line of cars run regularly upon a certain headway, on or before a certain day, and the complainant had proceeded with due diligence, but by reason of unforeseen circumstances had been unable to finish it within that time, but had been able to finish and operate it in accordance with the strict terms of the ordinance granting the privilege, say ten days later, I presume no person would contend that such a failure would justify the defendant in exercising the power of forfeiture against the complainant.

Now, the difference between the case so supposed and the one in hand is only one of degree. The complainant has not abandoned its project, but is using diligence to prosecute it, with prospect of success. If it succeeds the object of the forfeiture clause in the original ordinance will be realized. There is here no room for the supposition that any pecuniary injury has been suffered by reason of the delay, either by the township in its

North Jersey Street Ry. Co. v. South Orange.

corporate capacity or by any of its inhabitants individually. All that anyone could have suffered was the failure to receive the benefits of a street railway as soon as they had hoped to do. The case as now made does not show that the traveling public has not been as well accommodated as could be reasonably expected in the absence of a continuous line to Newark.

Now, under such circumstances, it seems to me now, however may appear at the final hearing and after further consideration and a thorough examination of all the facts, that it would be contrary to equity for the defendant to enforce its right of forfeiture, if it exists.

I have examined the authorities cited by the defendant, and I think none of them go far enough to sustain the proposed action of the defendant. The subject is discussed by Professor Pomeroy in section 451 of his treatise. He mentions unavoidable accident, fraud, surprise and innocent ignorance of facts as grounds which induce courts of equity to interfere.

Perhaps the inability of complainant to procure the consent of the Irvington authorities is not precisely included in either of those categories, but it is of the same nature.

The following decided cases show the disposition of the courts : *Grigg* v. *Landis, 6 C. E. Gr. 494,* is an instructive case ; *Mactier* v. *Osborn, 146 Mass. 399 ; Noyes* v. *Anderson, 124 N. Y. 175 ; Kopper* v. *Dyer, 59 Vt. 477,* contain valuable suggestions and citations of authorities.

I think the injunction should be continued to the hearing, and will so advise.