THE SPRINGFIELD AND NORTHEASTERN TRACTION COMPANY, Appellee, *vs.* ELIZABETH WARRICK *et al.* Appellants.

*Opinion filed April 19, 1911.*

1. DEEDS—*what provision is a condition subsequent.* A clause in a deed for a railroad right of way which provides that if the grantee shall fail to construct, build and continuously operate its proposed railway within two years between specified points then the land shall revert back and become the property of the grantors without re-payment of the consideration, is a condition subsequent.

2. SAME—*a court of equity does not favor forfeiture.* While a court of equity will enforce a forfeiture in a clear case yet it is not, favored, and if the enforcement of a forfeiture for non-compliance with a condition subsequent will work great injustice and hardship to the grantee and the grantor may be compensated in damages, the forfeiture will not be enforced.

3. SAME—*when failure to completely perform condition within time specified does not justify a forfeiture.* Failure of a railroad company to have its line completed and in continuous operation until some two months after the time provided for in the deed to the right of way does not justify a forfeiture, where the company attempted in good faith to comply with the condition on time, and where a forfeiture will result in great hardship and loss to the company and is not essential to preserve the grantor's rights or prevent serious injury to him.

4. EQUITY—*a court of equity has power to relieve against forfeiture.* Where compensation for the breach of conditions in a

deed can be made in money, a court of equity may relieve the grantee against forfeiture and require the grantor to accept reasonable compensation in money.

5. SAME—*when damages may be proved without a cross-bill.* Where an interurban railway company files a bill in equity to enjoin the prosecution of an ejectment suit and the forfeiture of a deed to right of way, and the defendant in his answer claims that he has been damaged by the company's failure to build farm crossings, fences and culverts, as required by the deed, the court may hear evidence of such damage without the filing of a cross-bill.

6. EVIDENCE—*what is not proper proof of damage.* Testimony of witnesses that a land owner would be damaged $10 a year by reason of a railroad company's failure to properly construct a right of way fence, $60 a year by reason of a farm crossing not being in proper condition and $30 a year for want of a proper drainage outlet, without stating the facts upon which such opinions are based, is not proper proof of damages from those causes.

APPEAL from the Circuit Court of Logan county; the Hon. T. M. HARRIS, Judge, presiding.

BLINN & COVEY, and BALDWIN & STRINGER, for appellants.

KING & MILLER, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is a bill in chancery filed by appellee in the circuit court of Logan county to enjoin the prosecution of an ejectment suit and the forfeiture of a certain deed by appellants. After the issues were joined the case was referred to a special master in chancery to take testimony but not to report his conclusions as to the law and facts. A hearing was thereafter had upon this testimony and certain other testimony taken later before a special master, and a decree was entered granting the relief prayed for in the bill and finding that appellants should pay the costs. This appeal was thereupon prosecuted.

September 30, 1904, appellants conveyed to the Springfield, Lincoln, Bloomington, Pekin and Peoria Railroad

Company, predecessor in title of appellee, a strip of land off the west side of their farm parallel to and adjacent to the right of way of the Chicago and Alton Railroad Company, containing about five acres and being a little over one mile in length. The deed recites that it is made in consideration of the payment of $1053.75, "and the further consideration of the covenants and agreements in this deed contained, * * * and the further consideration that said grantee shall build and forever maintain a fence upon the east side of said strip of land sufficient to turn all kinds of stock, said fence to be built by the said second party before it enters upon said described premises to commence its construction work, and shall furnish and construct a suitable and safe grade crossing over and across said right of way, with proper bridges thereto, and forever maintain the same, at a point opposite or near the present grade crossing of the Chicago and Alton Railroad Company adjacent to said described premises, the exact point for the location of said crossing to be designated by the grantors before or during the progress of the construction of the grantee's grade and track over and upon said premises," and in further consideration that under certain conditions the grantee would build a side-track to haul grain and produce and also would maintain a stopping point for passengers. "And in case said grantee shall fail to construct, build and continuously operate said proposed railway as to one track within two years from Springfield to Lincoln, or shall fail to keep and perform any of the terms and conditions imposed in this deed as therein provided, which are hereby made a part of the consideration thereof, then the strip or piece of land herein conveyed shall revert back and become the property of the grantors without the re-payment of the sum of money above mentioned, which shall be retained by the grantors." The road was not completed or electric cars put in operation between Lincoln and Springfield until December, 1906. Appellants served appellee with written notice of forfeiture

on account of the failure to construct, complete and continuously operate the road within the time provided in the deed and demanded immediate possession of the premises on November 14, 1906, and again on December 14 of the same year. This demand not being complied with, appellants, at the May term, 1907, of the Logan county circuit court, brought suit in ejectment to recover the land described in the deed, averring that the deed had been forfeited by reason of failure to comply with its provisions. This bill was thereupon filed to enjoin the prosecution of that suit and the forfeiture of the deed.

The proof shows that the chief part of the work of the construction of the road had been completed prior to September 30, 1906, and construction cars were running on that section between Lincoln and Springfield by steam power, the overhead work not yet being completed. It further shows that the delay in the completion of the work was caused partly, if not entirely, as a result of the failure to procure material for overhead construction; that this material was ordered in ample time but it was delayed to some extent by scarcity of material on the market, though principally by delay in transportation, for which neither appellee nor its agents were in any way responsible. The decree finds, and the weight of the evidence supports the finding, that the original company, the grantee in the deed, during the years 1904, 1905 and 1906 made substantial efforts, in good faith, to build the road within the time mentioned in the deed; that it met with financial embarrassments and unavoidable delays and disappointments in borrowing money, and transferred its property and rights to appellee for the purpose of having the road completed within the time required; that the total cost of the work done by appellee between October 1, 1906, and the first notice of the forfeiture, between Lincoln and Springfield, was approximately $50,000, and that as soon as the rails were laid on the land here in dispute a suitable and safe

farm crossing, with approaches thereto, was constructed for appellants. The construction of the road was not completed until some two months after September 30, 1906. From this record there can be little doubt that it would have been completed within the time agreed but for various delays not due to the negligence or fault of appellee or its agents in charge of the work of construction.

Appellants contend that the time fixed in the deed was intended to be, and was, of the essence of the contract, and that to entitle appellee to be relieved from the forfeiture it must be shown the failure to complete the work was the result of fraud, accident or mistake. Appellants speak of the provisions of the deed as covenants. We are disposed to hold that the estate created by the conveyance was upon a condition subsequent, and the appellants must have so regarded it when they declared a forfeiture and brought the ejectment suit. If the conditions in the deed were covenants it would not have entitled them to a re-entry upon the land, but they would have had a right of action for damages for a breach of covenants. (*Post* v. *Weil,* 5 L. R. A. 422, and note; 2 Elliott on Railroads, sec. 945; 6 Am. & Eng. Ency. of Law,—2d ed.—503.) Forfeitures will be enforced by courts in clear cases, but they are not regarded with favor, and their prevention is within the protecting care of equity whenever wrong or injustice will result from their enforcement. (*Palmer* v. *Ford,* 70 Ill. 369; *Mott* v. *Danville Seminary,* 129 id. 403; *Voris* v. *Renshaw,* 49 id. 425; *Zempel* v. *Hughes,* 235 id. 424.) It must be conceded that all of the conditions in the deed were not strictly complied with in the time stipulated, but it does not follow that the forfeiture must be sustained. Appellants stood by and permitted appellee to take possession of the ground and expend a large sum of money in grading and construction. The proof tends to show that the work between Springfield and Lincoln cost approximately $1,000,000, and that by far the greater portion of this money had been expended,

and the work, except overhead construction, substantially completed, prior to September 30, 1906. Under such circumstances it would be a great wrong and injustice to appellee to enforce a forfeiture of the deed. (*St. Louis and Belleville Electric Railway Co.* v. *VanHoorebeke,* 191 Ill. 633; *North Jersey Street Railway Co.* v. *Inhabitants of South Orange,* 43 Atl. Rep. 53; 1 Pomeroy's Eq. Jur. 451.) It is apparent from the provisions of the deed that the intention of both parties was that the land should be used for the construction and operation of the road between Lincoln and Springfield, and that to secure its use for that purpose and prevent its being diverted to any other or held without being used, it was provided that the road should be completed and in operation within two years. The failure to have it in operation until a few months later is not shown to have resulted in special hardship to appellants. The decree rightly found that the deed should not be forfeited and that the prosecution of the ejectment suit should be enjoined.

Appellants set up in their answer that they were damaged because the fence was not built and the farm crossing constructed in accordance with the deed. Appellee insists that such damages cannot be allowed in this proceeding, first, because the claim should have been presented by a cross-bill and not by answer; and second, because the forfeiture upon which the action in ejectment was based was declared solely on the ground of a failure to operate the road within two years and not because of failure to build the fence and crossing and provide proper drainage. The chancellor admitted evidence on this question under the pleadings, but the decree found that no damages had been proven by reason of the failure to construct and maintain the fence or crossing or from obstructing the flow of the surface water from the adjacent lands of appellants. In equity the harsh remedy of forfeiture yields to compensation when fair dealing and good conscience seem to require it.

(*Harlev* v. *Sanitary District,* 226 Ill. 213.) When equity is applied to for the rescission, cancellation and delivery up of deeds or agreements, the court .is not bound to pass upon the question as a matter of absolute right, but it is one within the sound discretion of the court, to be exercised in granting or refusing the relief, according to the court's own notion of what is reasonable and proper under the circumstances of the particular case. "In all cases of this sort where the interposition of a court of equity is sought, the court will, in granting relief, impose such terms upon the party as it deems the real justice of the case to require, and if the plaintiff refuses to comply with such terms his bill will be dismissed. The maxim is here emphatically applied, he who seeks equity must do equity." (2 Story's Eq. Jur. sec. 639; *O'Connell* v. *O'Conor,* 191 Ill. 215.) Where the compensation can be made in money, courts of equity will relieve against forfeitures and compel the party to accept reasonable compensation in money. (*Gallaher* v. *Herbert,* 117 Ill. 160; 4 Kent's Com.—14th ed.—*130.) The application of this principle in relieving against penalties or forfeitures in chancery must always depend upon the question whether compensation can or cannot be ascertained. Where there can be a clear estimate of damages or just compensation for breaches of conditions or covenants, courts of equity will relieve against forfeitures or penalties and require such compensation to be made. (*Harlev* v. *Sanitary District, supra;* 1 Pomeroy's Eq. Jur.— 2d ed.—sec. 381; *Watson* v. *White,* 152 Ill. 364.) This is not done in the ordinary sense of granting affirmative relief, in which case a cross-bill would usually be required, (*Stone* v *Smoot,* 39 Ill. 409; *Jackson* v. *Sackett,* 146 id. 646;) but on the ground that he who seeks in a court of equity to be relieved of a forfeiture or penalty is required by fair dealing and good conscience to make adequate compensation. Equity having obtained jurisdiction for one purpose will retain it to ascertain and enforce all the rights

of the parties involved in the subject matter in controversy.
(*People* v. *City of Chicago,* 53 Ill. 424.) The chancellor
therefore could rightly admit, under the pleadings in this
case, competent evidence to prove that appellants had been
damaged by non-compliance with the covenants and condi-
tions in the deed.

The record shows that before the interurban road was
constructed there was a farm crossing over the Chicago
and Alton railroad with a somewhat steep approach from
appellants' land. In this approach was a bridge or culvert
to permit the water to pass north along the Chicago and
Alton right of way a short distance and then west under
the track. Appellee's road runs east of and parallel with the
Chicago and Alton railroad, but the grade of the interurban
road is considerably lower than that of the Alton. In con-
structing the interurban at the place in question the bridge
in the approach was not taken out but was cut down to
correspond with the grade of the interurban road, a new
and additional channel being made through this approach
to permit the water to flow off the Warrick land, and a
temporary bridge was built across this channel while ap-
pellee's road was being constructed. After the road was
completed the old channel was filled up and a concrete
bridge and culvert were constructed across the new chan-
nel. Appellants offered proof to show that the fence was
not built in accordance with the deed; that hogs could and
did get under it. One of the appellants, however, testified
that at the time of the later hearing the fence would have
been in good condition if a barbed wire had been placed
on the top. There was no evidence that stock of any kind
had ever gotten over the fence. It seems to be claimed
that the damages caused by an improper bridge being con-
structed was as to the temporary bridge. The permanent
bridge over the channel in question, it was admitted by
the same appellant, would be in good condition if it had
"hub-rails," and the crossing in good condition if a sunken

place (where the former channel was spanned by the old bridge) were properly filled up. How much dirt would be required to fill up this sunken place is not clearly shown. There is no contention that the fence was not put up at the proper date before the commencement of the construction work, but there is a contention as to whether the crossing, including the bridge, was put in at the time specified in the deed. The provision of the deed reads: "Shall furnish and construct a suitable and safe grade crossing over and across said right of way, with proper approaches thereto, and forever maintain the same at a point * * * to be designated by the grantors before or during the progress of the construction of the grantee's grade and track over and upon said premises." Manifestly, a proper crossing could not be put in and finished until the right of way was graded and the track completed at that point. We think the weight of the evidence shows that the road over this land was not fully completed, as to ballasting and other necessary work, until a date after the witnesses for appellants had testified upon the question of damages, and, as we have seen, appellants concede that the crossing, at the time of the later hearing, was in good condition, except as to hub-rails and filling the sunken place.

Over the objection of counsel for appellee several witnesses testified for appellants that the amount of damages because the fence was not properly constructed was $10 a year, and by reason of the crossing not being in proper condition $60 a year, and because of there not being a proper outlet $30 a year. No attempt was made by any of these witnesses to state the facts upon which their opinions as to damages were based, their conclusions being based upon judgment or opinion. Opinion evidence is admissible only upon subjects not within the knowledge of men of ordinary experience, on the ground that the facts are of such nature that they cannot be so presented that the average juror can comprehend them sufficiently to form

an accurate opinion or draw correct inferences.   The opinions of witnesses should not be received as evidence where all the facts on which such opinions are founded can be ascertained and made intelligible to the court or jury.   (*Yarber* v. *Chicago and Alton Railway Co.* 235 Ill. 589; *City of Chicago* v. *McGiven*, 78 id. 347.)   Ordinarily a witness is not allowed to give his evidence as to the damages a party has sustained from a given act or omission, for in so doing he includes the law as well as the fact.   It is the duty of the jury or of the court to assess damages on data furnished by witnesses from which the amount of damages may be arrived at.   (1 Sutherland on Damages,—2d ed.— sec. 444; *Dushane* v. *Benedict*, 120 U. S. 630; 2 Jones on the Law of Evidence, sec. 390; 4 Ency. of Evidence, p. 12; Sedgwick on the Measure of Damages,—6th ed.—p. 748.) The opinions of witnesses should not be asked in such a way as to cover the very question to be found by the court or jury.   (*Hellyer* v. *People*, 186 Ill. 550; *Chicago and Alton Railroad Co.* v. *Springfield and Northwestern Railroad Co.* 67 id. 142.)   The opinions of witnesses as to the amount of damages caused by trespass in cutting a door in a building are not competent, no facts being asked for and none being given.   (*Rodgers* v. *Fletcher*, 13 Abbott's Pr. 299.)   In a suit to recover damages, by virtue of a contract, from feeding cattle poor hay, it was held that the witnesses must be confined to a statement of facts and not to opinions or conclusions as to the damages, formed from facts, whether known to themselves or derived from the testimony of others.   (*Morehouse* v. *Matthews*, 2 N. Y. 514.) In a suit on a written contract for damages as to digging and walling two cellars, it was held that the witnesses must state the items or particulars upon which they based damages, not making a general estimate of the amount. (*Dougherty* v. *Stewart*, 43 Iowa, 648; see, also, to the same effect, *Central Railroad Co.* v. *Senn*, 73 Ga. 705; *Harger* v. *Edmonds*, 4 Barb. 256; *Thomas* v. *Dickhart*,

66 id. 604; *Cleveland and Pittsburg Railroad Co. v. Ball,* 5 Ohio St. 568; *Bass Furnace Co.* v. *Glasscock,* 82 Ala. 452.)   If appellants were damaged by the fence not being built in accordance with the deed, they could have made proof as to the actual amount of damages caused by the hogs getting through, such as the destruction that was committed by the animals, or the time taken in getting them back or fixing the fence to keep them in.   No proof of any damage on account of stock getting through the fence was offered except the opinion evidence of these witnesses, testifying as experts, that the damage from the poor fence would amount to $10 per annum.   Neither was there any attempt to prove any items of damage caused by the poor crossing or the flooding of land.

We are disposed to hold that the fair construction of the provision as to farm crossing is that it should be completed within a reasonable time after the road should have been completed.   As we have seen, it is conceded that the farm crossing is in good shape, except possibly that it lacks hub-rails on the bridge and the filling in of the sunken place.   No proof was offered as to the cost of these additions.   It is true, there is some evidence in the record as to the cost of putting the farm crossing in a safe condition, but this referred to the condition of the crossing at the time of the temporary bridge and not after the permanent bridge was constructed.   That evidence, under our construction of the deed as to the time when the crossing should be completed, was not competent.   On this record there was no competent evidence as to damages by failure to construct and maintain the fence or crossing or from the obstruction of the flow of the surface water.

The decree of the circuit court must therefore be affirmed.

*Decree affirmed.*