## Thomas G. Atkins *vs.* Gardner Chilson.

The court has authority by the common law, to stay proceedings in a writ of entry brought to enforce a forfeiture designed to secure the payment of rent, and incurred by accident or mistake, upon the tenant's bringing the amount of the rent, interest and costs into court, for the demandant.

A lessee incurred the forfeiture of his term by tendering a quarter's rent, through mistake, a day or two before it was due, and omitting to pay it on the quarter day : The lessor had refused to receive the rent for several previous quarters, and had an action pending against the lessee, to recover the demised premises on the ground of another alleged cause of forfeiture : After failing in that action, the lessor brought a writ of entry against the lessee, to recover the premises on the ground of the forfeiture by non-payment of the aforesaid quarter's rent.   *Held*, that the proceedings in this last action should be stayed, on the lessee's paying to the lessor, or bringing into court for his acceptance, the full amount of the rent in arrear, with interest thereon and costs.

WRIT OF ENTRY, dated October 24th 1845, to recover land, with a store on it, in Blackstone Street, Boston.   At the trial

before *Shaw,* C. J. the following facts were proved or admitted:

The tenant claimed to hold the demanded premises under a lease of them made to him by the demandant, dated December 30th 1841, for the term of eleven years from January 1st 1842.   The rent, by the terms of the lease, was payable quarterly, on the 1st of April, July, October and January, every year during the term.   The lease contained the following clause :   "And the said Chilson, for himself and his representatives, hereby covenants and agrees to and with the said Atkins, his representatives and assigns, that he will, during the said term, pay unto the said lessor, his heirs or assigns, the said yearly rent, upon the days hereinbefore appointed for the payment thereof, except only· in case of fire or other casualty.   Provided always, and these presents are upon this condition, that if the said lessee, or his representatives or assigns, do or shall neglect or fail to perform and observe any or either of the above covenants hereinbefore contained, which on his or their part are to be performed, then and in either of said cases, the said lessor, or those having his estate in the premises, lawfully may immediately, or at any time thereafter, and whilst such neglect or default continues, and without further notice or demand, enter into and upon the said premises, or any part thereof in the name of the whole, and repossess the same as of his former estate, and expel the lessee and those claiming under him, and remove his or their effects, forcibly if necessary, without being deemed guilty of any trespass."

The demandant claimed to recover the demised premises, on the ground that the tenant had forfeited his estate by non-payment of a quarter's rent due October 1st 1843, upon which the demandant, on the 3d of October 1843, whilst the default continued, made an entry into and upon said premises in presence of witnesses, for breach of the conditions of said lease.   The tenant, protesting that no forfeiture had accrued, moved the court that all further proceedings be stayed, in the case, on his paying the rent and costs.   The chief justice

10*

passed an order (subject to the opinion of the whole court) that it be referred to an auditor to ascertain the amount of rent, and damages for its non-payment, due to the demandant from the tenant, and that, on payment of the same into court, for the demandant, with the costs to be taxed by the clerk, all further proceedings in the case should be stayed.

*Fletcher & Sewall,* for the tenant. Courts of law in Eng land, before the *St.* of 4 Geo. II. *c.* 28, that is, before the American revolution, stayed proceedings, in cases like the present, on payment of the rent and costs. And they did this even after judgment, if motion was made and the money brought into court before execution issued. Since that statute, this proceeding must be before judgment. See *Archer* v. *Snapp,* Andr. 341. *Nurse* v. *Frampton,* Comb. 299. *Goodtitle* v. *Holdfast,* 2 Stra. 900. *Downes* v. *Turner,* cited in 2 Salk. 597. *Phillips* v. *Doelittle,* 8 Mod. 345. *Smith* v. *Parks,* 10 Mod. 383. *Goodright* v. *Noright,* 2 W. Bl. 746. *Anon.* 1 Wils. 75. *Doe* v. *Lewis,* 1 Bur. 619. *Doe* v. *Roe,* 3 Taunt. 402, and 4 Taunt. 883. Bul. N. P. 97. Comyn Land. & Ten. 493. Taylor Land. & Ten. 58. Chambers on Leases, 160, 161. 2 Archb. Pract. K. B. (1st Amer. ed.) 188. *Powers* v. *Powers,* 11 Verm. 262. Staying proceedings is a common practice of courts of law, on equitable principles. Howe's Pract. 433. *Whipple* v. *Newton,* 17 Pick. 168. *Hatfield* v. *Baldwin,* 1 Johns. 506. *Doe* v. *Brenton,* 6 Bing. 469, and 4 Moore & Payne, 186.

, But if there were no English decisions in favor of the tenant, the court would stay proceedings in this case; as it will shape the forms of remedy, where a right clearly exists. See *Fales* v. *Russell,* 16 Pick. 315. *Meeker* v. *Jackson,* 3 Yeates, 442. *Lewis* v. *Petayvin,* 16 Martin, 4. *Adams* v. *Manning,* 17 Mass. 178. *Winslow* v. *Hathaway,* 1 Pick. 211. Broom's Maxims, 36.

The following authorities show the extent to which the English courts of law have gone, in staying proceedings when justice and equity require that they should be stayed *Fisher* v. *Prince,* and *Bonafous* v. *Rybot,* 3 Bur. 1363, 1373

*Vernon* v. *Wynne,* 1 H. B. 24. *Coombe* v. *Sansom,* 1 Dowl. & Ryl. 201. 1 Tidd's Pract. (1st Amer. ed.) 465, 482 – 490. Graham's Pract. 422. 14 Petersd. Ab. 724 *&* *seq.*

*C. P. Curtis,* for the demandant. By the Rev. Sts. *c.* 101, § 8, " if the demandant " in a writ of entry " shall prove that he is entitled to such estate in the premises as is set forth in the declaration, and that he had a right of entry on the day when the action was commenced, he shall recover the premises, unless the tenant shall prove a better title in himself." If the demandant had expelled the tenant, as he might by the terms of the lease, it will not be pretended that the court would restore him to possession on his paying the rent. The demandant would then have been repossessed of his old estate, and payment would not give the tenant a new possession nor a right to it. Bac. Ab. Conditions, O. 1, 4. Rent, I. 1. In the tenant's lease, the payment of rent was a condition of his right to hold the demised premises. See *Gray* v. *Blanchard,* 8 Pick. 284.

The case in 11 Verm. 262, and most of the English cases cited for the tenant, are those of ejectment; and Lord Holt says, in *Gregg's case,* 2 Salk. 597, that the courts of law stay proceedings " in ejectment, on a special reason, viz. because that action subsists entirely upon the rules of the court." The case at bar is a writ of entry, in which the demandant is to recover, " unless the tenant can prove a better title."

The power of this court to mitigate forfeitures, and to enter judgment for the sum equitably due on bonds with a penalty, is derived wholly from statute. Anc. Chart. 324. *St.* 1785, *c.* 22. Hence the court will not exercise the power which it is now asked to exercise, without a statute authority first granted. See *Black* v. *Black,* 4 Pick. 234. *Gould* v. *Gould,* 5 Met. 274.

WILDE, J. This was a writ of entry to recover possession of a lot of land, formerly leased by the demandant to the tenant for a term of years not yet expired.

The action is founded on an alleged breach of a condition in the lease, by the non-payment of rent, and a clause of entry

thereupon reserved by the demandant in the lease. The tenant, protesting that no forfeiture had accrued, moved the court, at the trial, to stay all further proceedings in the case, on his paying the rent and costs. This motion was sustained by the chief justice, who presided at the trial, and the questions now are, whether a court of common law has power to grant the relief prayed for, and if so, whether it ought to be granted on the facts reported.

It was objected, on the argument, that the motion was prematurely made, as the question of forfeiture should have been first determined. But this objection ought to have been, made at the trial, when the tenant might have elected to confess the forfeiture or to proceed in the trial, or the court might have ordered the question of law to be first decided, notwithstanding the objection. That the court has such a discretionary power is very clear. The question, therefore, has been regularly submitted to our consideration, and it will be beneficial to both parties that it should be now decided ; the tenant admitting, notwithstanding his protestation, (as he does for the purpose of deciding the present question,) that there has been a breach of the condition in the lease, as alleged in the declaration.

It was then objected by the demandant's counsel, that he having made out a clear title to the demanded premises, is entitled to judgment, and that this court, as a court of law, has no right and legal authority to stay further proceedings, as prayed for. This, it has been argued, is a novel question in this Commonwealth, from which it is inferred by the demandant's counsel, that the court is not authorized to grant relief. But this inference is not conclusive ; for it may be that no case has occurred requiring such relief, or such relief may have been granted and the evidence of any such decision may have been lost. The history of the proceedings of our courts of law before the revolution is imperfect ; and we think that the novelty of the question, in this court, ought to have little or no influence in the decision ; especially as we consider the principles and rules of court in England,

upon which the question depends, to have been long well established.

That a court of equity would grant relief in a case like this is not questioned, and cannot be denied. The true foundation of equitable relief, in cases of penalties and forfeitures, is limited to such cases as admit of compensation according to the original intent of the parties. And in all cases where the penalty or forfeiture is designed to secure the payment of a certain sum of money, a court of equity will grant relief, on payment of the money secured, with interest; as in case of penalties or forfeitures for the non-payment of rent, and other similar cases. 2 Story on Eq. §§ 1315, 1320. *Sanders* v. *Pope*, 12 Ves. 282. *Baxter* v. *Lansing*, 7 Paige, 350. It is, however, denied that courts of common law have any such power. But the authorities cited by the counsel for the tenant abundantly show that in many cases, and for a long period of time, the courts of common law in England have exercised such a power, by granting relief in support of equitable defences, " for the easier, speedier and better advancement of justice," without turning the party over to a court of equity. *A fortiori* ought this to be done in cases where courts of equity have no jurisdiction, by reason of the limitation of their powers. The ancient common law, as known and administered before the days of Bracton, has been much improved and enriched by the introduction of many principles of the civil law, and by rules of practice founded on justice and equity, and by the labors and investigations of learned judges and jurists, who have laid down the just rules and principles by which the courts of common law are to be governed, at the present day, in the administration of justice.

At the present time, and long before our separation from the government of England, courts of common law and courts of equity have and had concurrent jurisdiction in many cases; such as cases of fraud, nuisance, waste, and many other cases; although the theory is, that courts of equity will not interpose and sustain a bill for relief, where there is an adequate remedy

at law — courts of equity having been originally established for the purpose of supplying the defects, and correcting the rigors or injustice of the common law, so that justice may be dis-tributed and enforced in the most perfect manner, *secundun; æquum et bonum.* Courts of law, therefore, are bound to ad-minister justice, where they may consistently with the prin-ciples and rules of the common law, and not to compel parties to resort to courts of equity to obtain relief. They will stay proceedings, when thereby full justice may be done, and in cases where a court of equity would enjoin the plaintiff not to prosecute his action at law. Thus unnecessary expense and delay are avoided, and no injustice is done. On this ground, courts of common law interpose in support of an equitable defence. And so, also, in cases which are not within the ju-risdiction of courts of equity. Thus, in trover for the con-version of a specific article, the article may be brought into court, in some cases, and upon payment of costs proceedings may be stayed. The rule is laid down by Lord Mansfield, in *Fisher* v. *Prince,* 3 Bur. 1364, " that where trover is brought for a specific chattel of an ascertained quantity and quality, and unattended with any circumstances that can enhance the damages above the real value, but that its real and ascer-tained value must be the sole measure of the damages, there the specific thing may be brought into court." Such mo-tions, however, are not granted of course, but they must depend upon their own circumstances. So in replevin, where the defendant avowed for rent in arrear, the plaintiff in replevin was allowed, in *Vernon* v. *Wynne,* 1 H. B. 24, to bring into court the rent specified in the avowry, and, on payment of costs, all further proceedings were stayed. The only objec-tion made in that case by the defendant's counsel was, that it would be permitting a plaintiff to pay money into court, which had never before been known; an indulgence of that kind having been always confined to defendants.

There are many other cases in which courts of law inter-pose, on equitable grounds, to prevent oppression or unneces-sary costs; as in the common rule for allowing the defendant

to bring money into court, with costs; in which case, if the plaintiff refuses to accept the sum tendered, and proceeds in the trial, the defendant will be entitled to costs, unless the plaintiff can prove that more is due to him than the sum tendered. So if separate actions are brought against the acceptor, drawer, and indorsers of a bill of exchange, the court stay proceedings against the drawer, or any of the indorsers, on payment of the bill, and costs of the action; although not against the acceptor, without payment of costs in all the actions. *Smith v. Woodcock*, 4 T. R. 691. 1 Tidd's Pract. (1st Amer. ed.) 482. But the rule more directly in point is that long since adopted by the courts in England, in ejectment, on a clause of reëntry for non-payment of rent, as in the present case. So long since as the year 1738, Lee, C. J. remarked, in the case of *Archer* v. *Snapp*, Andr. 341, that before the *St.* of 4 Geo. II. the court of king's bench had exercised a discretionary power of restraining the lessor from proceeding for a forfeiture, in case of non-payment of rent, " by compelling him to take the money really due to him." How long before courts of law had exercised that power, is uncertain, and is not material. But in *Gregg's case*, 2 Salk. 597, Lord Holt is reported to have said that it was done " in ejectment on a special reason, viz., because that action subsists entirely upon the rules of the court." But surely that could not have been the main reason; for if the court had power to substitute a new and fictitious form of action for a writ of entry, as a more convenient remedy in the administration of justice; if they could introduce and establish the action of assumpsit as a substitute for an action of debt on simple contract, to avoid the defendant's wager of law, which was done to the great advancement of justice; they had authority to establish the same rule in a writ of entry as in the action of ejectment; and no doubt it would have been done, if the former action had not been almost, if not entirely, disused in practice, after the introduction of the latter form of action. But the form of the action seems to be immaterial. The equitable foundation of the rule in question, and the end to be obtained, are the same in both forms of action.

Whether the *St.* of 4 Geo. II. *c.* 28, extended to this country or not, is a question which it is not necessary to decide. The powers of this court and the practice of the courts of law in England do not depend on that statute. " The true end and professed intention of this act of parliament," as is said by Lord Mansfield, in 1 Bur. 619, " is to take off from the landlord the inconvenience of his continuing always liable to an uncertainty of possession, (from its remaining in the power of the tenant to offer him compensation at any time, in order to found an application for relief in equity,) and to limit and confine the tenant to six calendar months after execution executed, for his doing this, or else that the landlord should from thenceforth hold the demised premises discharged from the lease." 2 Sellon's Pract. 127. It is true that this statute regulates, in some measure, the practice of staying proceedings in the courts of law. But the practice had its origin long previously to the statute ; and the authority of the courts to establish such a rule of practice was never questioned.

We have no doubt, therefore, of the power of this court to stay proceedings in support of an equitable defence. And if we have such power, that it ought to be exercised in this case, no one, we think, can doubt. We cannot imagine a more unjust and oppressive claim, than that which the demandant attempts to enforce. By mistake, the tenant, as it was said on the argument and not denied, tendered a quarter's rent a day or two before it was due ; but this was no prejudice to the demandant. And it is quite certain that the rent would not have been received, if it had been tendered on the day when it was payable ; for the demandant, as his counsel admits, (and as we know judicially,) had then an action pending for the supposed breach of another condition of the lease, for which he claimed the forfeiture. See *Atkins* v. *Chilson*, 9 Met. 52. The demandant, therefore, could not have accepted rent without defeating his action, as such an acceptance would amount to a waiver of the forfeiture.

We are therefore of opinion that the rule adopted at the trial should be made absolute, with some enlargement, however, of

the terms.    We think the tenant is bound to pay all the rent
now in arrear, with interest ; for although the demandant has no
legal right to interest, (it being admitted that all the rent,
except for one quarter, has been duly tendered to him,) yet he
has an equitable claim, as the tenant, no doubt, has had the
use of the money.    For he must have known that the money
would not be demanded of him ; and the presumption is that
it was used by him.

The sum due to the demandant being ascertained accord-
ing to this modification of the rule, the further proceedings in
the case are to be stayed, on payment of the sum due, with
costs, or by bringing the same into court for the demandant's
acceptance.    [See *St.* 1847, *c.* 267, $ 1.]