(No. 19230.—
THE ILLINOIS MERCHANTS TRUST COMPANY *et al.* Defendants in Error, *vs.* BERTHA F. B. HARVEY, Plaintiff in Error.

*Opinion filed June 19, 1929.*

MAYER, MEYER, AUSTRIAN & PLATT, for plaintiff in error.

WILSON, McILVAINE, HALE & TEMPLETON, (WILLIAM B. HALE, J. F. DAMMANN, JR., and CALVIN SELFRIDGE, of counsel,) for defendants in error.

Per CURIAM: An opinion in this cause was filed at the February term, 1929. A petition for rehearing was filed and allowed. Upon further consideration the court adheres to the conclusions reached in that opinion and it is re-adopted and re-filed.

Mr. JUSTICE STONE delivered the opinion of the court:

Defendants in error, as trustees of the residuary estate of Marshall Field, deceased, filed a suit in assumpsit in the superior court of Cook county against plaintiff in error to recover the sum of $8350.97 theretofore paid by them to her. This sum had been paid on the demand of plaintiff in error that she be reimbursed for income taxes which she

had paid for a number of years on rentals received from defendants in error, as tenants. The demand for such payment was based on a clause in a lease between the parties. The lease was originally between plaintiff in error and others as lessors and Marshall Field as lessee. Plaintiff in error later acquired the interests of the other lessors, and the suit is against her, only. Plaintiff in error is hereinafter also designated as lessor and defendants in error as lessees.

The ground of recovery as set out in a special count of the declaration is that the payment was made under duress. Under article 3 of the lease between the parties the lessees were to pay all taxes, water rates, special assessments, and all other similar impositions of every kind which should be levied or imposed upon the premises described in the lease. On March 9, 1921, the lessor demanded that the lessees pay to her the income taxes levied against and collected from her by the United States government upon rents which she had received from the lessees for the years 1916 to 1919, inclusive. The lessees denied that they were liable to pay such taxes. Article 2 of the lease provided that in case default on the part of the lessees shall continue sixty days after written notice thereof, the leasehold estate should be forfeited and the lessees should surrender the building on the land without compensation being paid therefor by the lessor. On March 9, 1921, the lessor served on the lessees a notice stating that they were in default in that they had not paid such income taxes, and that unless the default was made good within sixty days after the service of such notice the lessor would exercise her election to declare the lease terminated and avail herself of the rights reserved therein. These are averments of the declaration. There is also therein averred the erection of a building by the lessees and the leasing thereof to Marshall Field & Co. This leasehold is alleged to be of the value of $2,000,000. It is complained that a forfeiture of the lease would have caused a loss to

the lessees of the entire leasehold; that neither the amount ($8350.97) demanded by the lessor, nor any other amount, was due from the lessees, but owing to the lessor's threat of forfeiture and fear of possible loss of the leasehold estate, with the building thereon, the lessees were under compulsion and duress by the lessor and paid the sum demanded to prevent forfeiture of the lease. The lessor filed the general issue and a plea denying that payment was made under protest or on account of threats, compulsion or duress, but that the facts on which the claim was based and on which a settlement was had were fully known to the lessees and payment was made in satisfaction thereof. A plea of accord and satisfaction and one of the Statute of Limitations were also filed.

The facts are substantially without dispute. The lease was executed in 1904 between plaintiff in error and others as lessors, and Marshall Field, now deceased, as lessee, by which certain real estate on Wabash avenue, in the city of Chicago, on which a part of the retail store of Marshall Field & Co. now stands, was leased to Field. The lease was later extended, under an option therein contained, to 1980. It required the lessee to erect a building not less than eight stories in height. Defendants in error paid the income tax on the rental paid for the years 1914 and 1915, but by reason of an amendment to the Income Tax law they refused to pay such tax for the years 1916 to 1919, inclusive, in the belief that they did not owe such tax.

The notice of forfeiture in substance stated that the lessees were in default in performance of the covenants of the lease by reason of failure to pay the tax levied by the United States government upon the rents paid by the lessees to the lessor under the terms of the lease for the years 1916 to 1919, inclusive, and contains the following language: "And you are notified hereby that unless you make good your default in the performance of the covenants and agreements in said lease contained on the part of the lessee

to be performed as to the rentals herein mentioned, within sixty days after this notice has been given to you, the lessors will exercise their election to declare the term of said lease ended and avail themselves of the rights reserved in said lease upon the termination thereof." On May 6, 1921, counsel for defendants in error paid plaintiff in error the sum of $8350.97, which included also the tax for 1920, $1450 attorney's fee and $100 accountant's fee. At the time this payment was made, or prior thereto, counsel for defendants in error protested that they did not owe that amount, or any amount, to plaintiff in error, but that they could not afford to litigate the question in any suit involving the possible forfeiture of the lease. At the October term, 1923, this court in *Young* v. *Illinois Athletic Club,* 310 Ill. 75, decided that a lessee under a lease similar to the one here involved was not required to pay the lessor's income taxes on rent received. Thereafter defendants in error filed this suit. The cause was tried before a jury. At the close of all the evidence the court directed a verdict for plaintiff in error and judgment was entered thereon. On appeal to the Appellate Court this judgment was reversed and a judgment entered in that court in favor of defendants in error for $11,269, including the full amount paid, plus interest at five per cent per annum. The cause comes here on *certiorari.*

Plaintiff in error contends, first, that the payments were not made under compulsion or duress but voluntarily under a mistake of law; and second, that if the verdict should not have been directed for defendants in error by the trial court it was a question of fact for the jury whether payment was made under compulsion or duress.

Concerning the first assignment, counsel argue that such payment was not made under duress but was, at most, a payment made in mistake or ignorance of law, as to which question defendants in error could have had their day in court either by bringing a bill in equity to restrain the threatened forfeiture or by defending a suit brought for posses-

sion, and having failed to resort to such remedy the payment is voluntary and not compulsory.

The authorities agree, and it is agreed in the briefs, that a payment made under compulsion or duress may be recovered. The application of this rule of law has not at all times been uniform. At the common law duress meant duress only of person, and nothing short of a reasonable apprehension of imminent danger to life, limb or liberty sufficed as a basis for an action to recover money paid. The doctrine became gradually extended, however, to recognize duress of property as a sort of moral duress, which, equally with duress of person, entitled one to recover money paid under its influence. To-day the ancient doctrine of duress of person (later of goods) has been relaxed, and extended so as to admit of compulsion of business and circumstances. *Illinois Glass Co.* v. *Chicago Telephone Co.* 234 Ill. 535.

Compulsory payment is primarily a question of fact. No precise rules can be laid down as to what will constitute a compulsory payment though the principle has been illustrated by a number of cases in this and other courts. In *Bradford* v. *City of Chicago,* 25 Ill. 349, a property owner refused to pay a void assessment. A demand was made on him by a collector who had in his hands a warrant authorizing him to levy on and sell the goods and chattels of the property owner. It was considered that no opportunity was afforded him to save himself and property in any other way than by paying the illegal demand, and, such payment being protested, was deemed to have been made under duress and could be recovered. So in *County of LaSalle* v. *Simmons,* 5 Gilm. 513, where a ferryman was required to pay an excessive and illegal charge for the renewal of his license, it was found that he was in the power of the county commissioners, from which power he had no way to extricate himself and was thus compelled to pay the money and could therefore recover it. In *Spaids* v. *Barrett,* 57 Ill. 289, the owner of a shipment of oysters which had been seized on il-

legal attachment was permitted to pay the amount demanded and recover it on the ground that the payment was under duress. The oysters were in danger of spoiling, and it was considered that even though he had recourse to the bond given in attachment, yet if such action were taken an injury would be done to his business for which he could not be compensated and which he could not avoid except by paying the illegal demand. So in *Chicago and Alton Railroad Co.* v. *Chicago, Vermilion and Wilmington Coal Co.* 79 Ill. 121, the coal company was allowed to recover excessive freight charges imposed by the railroad company, which had refused to carry the coal otherwise. The coal company had no other way to market its coal and delay was damaging to its business, and it was therefore held to have paid under duress. In *Pemberton* v. *Williams,* 87 Ill. 15, the purchaser under a contract for the sale of land had re-sold the land and his purchaser was demanding a deed, but his grantor would not give him a deed unless he paid more money, which he did. It was said that it was a question for the jury whether he was under moral duress for the reason that no adequate relief was afforded him to avoid the payment. So in *City of Chicago* v. *Northwestern Mutual Life Ins. Co.* 218 Ill. 40, it was held that an illegal charge for water rent, which was paid under threat of shutting off the supply of water, could be recovered as having been paid under duress, since the payor was in immediate danger of having the water shut off, to the injury of itself and its tenants, before it could procure relief against such illegal demand. In *Chicago and Eastern Illinois Railway Co.* v. *Miller,* 309 Ill. 257, the Illinois Commerce Commission, following a void statute, refused to approve the bonds of the railway company unless the fee provided by such statute was paid. The railway company paid the amount and was allowed to recover on the ground that losses were certain to follow the attempt of the railway company to market its bonds without the approval of the commission,

and this, apparently, would occur before action could be taken by the railway company to compel the commission to approve its bonds.

On the other hand, in a number of cases recovery was denied on the ground that payments were not compulsory. Of this character is *Elston* v. *City of Chicago,* 40 Ill. 514, where the payment of a void assessment was held to have been made voluntarily. The rule was there early laid down that a payment made with full knowledge of all the facts and circumstances and in ignorance only of legal rights can not be recovered; that in order to render a payment compulsory such pressure must be brought to bear upon the person paying as to interfere with the free enjoyment of his rights of person or property, in the sense of depriving him of the exercise of his free will. The rule generally followed in tax cases is, that although the statute imposing the tax be unconstitutional and the tax illegal, it cannot be recovered if paid voluntarily or under mistake as to legal rights but with knowledge of the facts, where an opportunity is afforded to defeat the tax. *School of Domestic Arts and Science* v. *Harding,* 331 Ill. 330; *Swanston* v. *Ijams,* 63 id. 165; *Illinois Glass Co.* v. *Chicago Telephone Co. supra.*

From the Illinois cases cited, and those of other jurisdictions, the rule is deducible that where one, to prevent injury to his person, business or property, is compelled to make payment of money which the party demanding has no right to receive and no adequate opportunity is afforded the payor to effectively resist such payment, it is made under duress and can be recovered.

Counsel for plaintiff in error argue, however, that defendants in error were not in this situation; that they had an opportunity to defeat this demand and avoid payment either by a bill in equity to enjoin the threatened forfeiture or in defense of a forcible detainer suit. It would seem, however, that defendants in error should not be compelled

to rely on success in a forcible detainer action, for the reason that if they failed the entire leasehold, amounting in value to $2,000,000, would be entirely lost to them, while if they succeeded they would save but little over $8000. It cannot be said that with this great difference between loss and gain in such a lawsuit a payment made to avoid that situation would be voluntary. It is now conceded that the demand was illegal.

The chief contention of plaintiff in error is that defendants in error were entitled to maintain a bill in equity to prevent the threatened forfeiture. Defendants in error concede that if this be true the payment was not compulsory, but they contend that a bill in equity would not lie because they had a remedy at law,—that is, to pay and sue to recover the amount, as they did, and that this was their only remedy at law. We are unable to adopt this reasoning, for it decides for defendants in error the main question in the case,—that is, whether they had a right to pay and recover,—and then uses such decision as a logical premise to prove that the case should be decided in favor of the payor. This overlooks the fact that the payor is seeking in this suit not to avoid a forfeiture but to recover money paid on an illegal demand. If he may avoid the payment of such demand by resorting to a remedy in equity but does not avail himself of such remedy the payment is not compulsory even though pressure for payment is re-enforced by a threat to commit injury.

Defendants in error contend, and the Appellate Court held, that the weight of authority in this State is that there is neither a right to redeem from a forfeiture such as was provided in this lease, or a right to enjoin such forfeiture. To sustain this proposition counsel rely on *Palmer* v. *Ford,* 70 Ill. 369, and *Chadwick* v. *Parker,* 44 id. 326. The former was a bill in equity to enjoin further prosecution of suits to dispossess certain sub-tenants of complainant by complainant's landlord, who was claiming forfeiture of the

lease and for an accounting. The ground set up in the bill was that there never had been a declaration of forfeiture by complainant's landlord against him. Relief was granted on the ground that the proof did not show a forfeiture. The lease there considered conferred upon the landlord a clear right to declare a forfeiture for non-payment of rent, and it was said in the opinion that if such right had been properly exercised the bill ought to have been dismissed, but the holding was, that as a declaration of forfeiture was not shown and as the parties had made a contract relating to the collection of rents and the completion of the building by the landlord, and an accounting was involved, equity would take jurisdiction. In that case the lessee had taken a long-time lease on vacant real estate and had commenced the construction of a building thereon. Becoming embarrassed by lack of funds, the lessee had permitted the ground rent to fall in arrears. A portion of the building, however, having been completed and tenants let in, an arrangement was made between the lessor and the lessee that the lessor would complete the building and his agent would collect the rentals from the tenants and apply the same on ground rent and expense of completing the building. It was claimed that a forfeiture had been declared, but this fact was controverted and the court found that there had been no forfeiture. The opinion states that had the right of forfeiture been properly exercised the bill ought to have been dismissed; and that was so in that case for the reason that if a forfeiture had properly been taken the lessee's act in permitting his tenants to attorn to his landlord though he himself was in possession of certain parts of the premises, and other facts there considered, would have shown that the lessee was not entitled to relief. The forfeiture was not proved and equitable relief was granted. The statement in the opinion that had forfeiture for non-payment of rents been shown the bill should have been dismissed, while correct as to the facts of that case, was not intended to and does not announce a rule,

as is supposed, that when the lessor threatens a forfeiture such forfeiture cannot be enjoined in equity.

Counsel also argue that because of sections 8 and 9 of the Landlord and Tenant act equity cannot enjoin a threatened forfeiture. We are unable to agree with this contention. These sections of the statute (Cahill's Stat. 1927, p. 1575,) give a right to the landlord, under the conditions therein named, to serve notice of a forfeiture and termination of tenancy. The source of the right in the landlord to declare a forfeiture is not important. It is of the nature of equitable relief that it may be granted to obviate the effect of an act which the other party has a right to perform but by which he in equity and good conscience should not be allowed to benefit. Equity jurisprudence proceeds on the ground that a party having a legal right shall not be permitted to avail himself of it for the purpose of injustice, fraud, oppression or harsh and vindictive injury. (3 Story's Eq. Jur.—14th ed.—sec. 1728; *Lehigh Valley Railroad Co.* v. *Searle and Stark Heirs,* 248 Pa. 385, 94 Atl. 74.) We are unable to see any difference between a right given by statute and one arising from any other source. The basis of the relief is that the defendant is seeking to exercise a right which he has but which he should not be permitted to exercise.

It is generally recognized by courts and writers that in a lease covenants for forfeiture and re-entry by reason of a breach of the lessee's covenant to pay rent are designed as an additional security for the payment of rent. Prior to the statute of George II, in 1731, courts of equity took jurisdiction to restrain forfeitures, and by reason of the tardy process of those courts the rights of the landlords remained undefined and unsettled, to their very substantial injury. The statute of George II, chapter 4, gave to the lessor, when six months' rent was in arrears, the right to re-enter to serve a declaration of ejectment for the recovery of the demised premises without formal demand or entry,

and the tenant might pay before judgment, or if he did not do so he had a right to file a bill for relief in equity within six months after execution for possession was secured. While the statute of George II is not in force in Illinois, as only those English statutes passed prior to the year 1606 are part of our common law, yet in this State and elsewhere forfeitures are not regarded with favor, and where the right of forfeiture is, as in this instance, an additional security for rent, its prevention is within the protecting care of equity whenever wrong or injury will result from its enforcement. (*Springfield and Northeastern Traction Co.* v. *Warrick,* 249 Ill. 470; *Palmer* v. *Ford, supra; Lehigh Valley Railroad Co.* v. *Searle and Stark Heirs, supra; Follingstad* v. *Syverson,* 160 Minn. 307, 200 N. W. 90; *Abrams* v. *Watson,* 59 Ala. 524; Taylor on Landlord and Tenant, sec. 495; 2 Story's Eq. Jur. sec. 1315; *Atkins* v. *Chilson,* 52 Mass. 112; *Maginnis* v. *Knickerbocker Ice Co.* 112 Wis. 385; *Sheets* v. *Sheldon,* 7 Wall. 416; *Ostenberg* v. *Scotts Bluff Investment Co.* 106 Neb. 143, 183 N. W. 95; 1 Pomeroy's Eq. Jur.— 4th ed.—sec. 433.) *Chadwick* v. *Parker, supra,* cited by defendants in error, does not hold to the contrary. The issue in that case was whether the notice to quit embraced in the Landlord and Tenant act permitted the landlord to call a forfeiture as at common law and then give ten days' notice to quit, or whether he was required to give ten days' notice that he would call a forfeiture, during which period the tenant might remedy the default. The decision construes those sections.

Cases cited by defendants in error holding that money may be paid and recovered as a payment under duress and that there was no equitable relief against such demand are tax cases, where the statute was self-executing and the injury arising from failure to comply therewith was impending and without opportunity to contest before the injury was inflicted. In tax cases, where the State is put to action

to recover the tax, which action may be defended by the property owner, payment of an illegal tax is voluntary and cannot be recovered. *School of Domestic Arts and Science v. Harding, supra.*

We are of the opinion that the forfeiture threatened against defendants in error was cognizable in equity, and that, the demand being invalid and the result of a forfeiture being of serious consequence to defendants in error, equity would have relieved against the same. Defendants in error had sixty days in which to apply for such relief. There was adequate time to secure the aid of equity and that court was open to them. It follows that the payment by them was voluntary and not made under compulsion or duress.

The superior court was right in instructing the jury to return a verdict against defendants in error and in entering judgment on the verdict, and the Appellate Court erred in reversing the judgment.

The judgment of the Appellate Court is reversed and the judgment of the superior court is affirmed.

*Appellate Court reversed, superior court affirmed.*