ROXANA PETROLEUM CORPORATION v.
BOLLINGER et al.

No. 4578.

Circuit Court of Appeals, Seventh Circuit.

Dec. 11, 1931.

Rehearing Denied Jan. 11, 1932.

Guy A. Thompson, S. A. Mitchell, Frank A. Thompson, Truman P. Young, Lloyd L. Adams, and J. R. Van Slyke, all of St. Louis, Mo., for appellant.

Oscar E. Carlstrom, Atty. Gen., and Montgomery S. Winning, Asst. Atty. Gen., for appellees.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

ALSCHULER, Circuit Judge.

The appeal is from a decree dismissing for want of equity appellant's bill filed March 19, 1928, for recovery of money which it had paid appellees, in their official capacity, as license tax on motor fuel sold or used by it in the state during the month of January, 1928, under the provisions of "An Act to impose a license tax on the sale and use of motor fuel," which had been enacted June 29, 1927 (Laws Ill. 1927, p. 758), and which the Supreme Court of Illinois, on February 24, 1928, held to be unconstitutional. Chicago Motor Club v. Kinney, 329 Ill. 120, 160 N. E. 163.

If the tax of which recovery is sought was freely and voluntarily paid, without purpose or intention of the taxpayer at time of payment to question or resist it or recover it back, it may not thereafter be recovered. Chesebrough v. United States, 192 U. S. 253, 24 S. Ct. 262, 264, 48 L. Ed. 432, where it is stated: "The rule is firmly established that taxes voluntarily paid cannot be recovered back, and payments with knowledge and without compulsion are voluntary."

Whether a tax was paid voluntarily or under compulsion involves basically the taxpayer's state of mind at time of payment, and this must be gathered from the evidence. In Illinois Merchants Trust Co. v. Harvey, 335 Ill. 284, 289, 167 N. E. 69, 71, it was well said: "Compulsory payment is primarily a question of fact. No precise rules can be laid down as to what will constitute a compulsory payment though the principle has been illustrated by a number of cases in this and other courts."

If with payment of the tax appellant had submitted a written statement to the effect that it had taken out a license under the act, and without protest or reservation of any kind had made the five monthly payments preceding the one in question; that it was aware that a suit was pending in the Illinois courts questioning the constitutionality of the Motor Fuel License Tax Act, but that it had no interest in that controversy, and was willing to pay the tax because of the benefits to appellant and other distributors of motor fuel in the state through the employment of the tax for the building of hard roads in the state, and the resultant increase in sales of motor fuel and other oil products for automobiles within the state; and that, in any event, the tax did not seriously affect the taxpayer, be-

cause in practice the tax was first collected by the taxpayer from its customers by adding the tax to the price of the fuel; and that the taxpayer, without making the protest provided for in the Illinois statutes, paid the tax, well knowing that, if not accompanied by a protest, the tax might at once be paid into the state treasury, and that the state could not, without its consent, be sued to recover the tax;—such state of facts would indubitably indicate in the taxpayer a state of mind in which no element of compulsion entered.

As bearing upon appellant's state of mind at the time of making payment here in question, we point out these record facts:

That, judging from its reported sale and use in Illinois of 4,234,623 gallons of motor fuel for the month of January, appellant was a very large concern, no doubt abundantly able to make resistance to the enforcement of the Motor Fuel Tax Act had it been so disposed.

That, upon the passage of the act, and without any question, it procured a license thereunder, and, as each month passed, made a return for the previous month, and without protest or question paid to the Department of Finance of the state the tax specified in the act.

That appellant knew, or in any event must be held to have known, there was in effect in Illinois during all of that time a statute which provided: "It shall be the duty of every officer, board, commission, commissioner, department, institute, arm or agency brought within the provisions of this Act by section 1 hereof to hold for thirty days all moneys received for or on behalf of the State under protest and on the expiration of such period to deposit the same with the State Treasurer unless the party making such payment shall within such period file a bill in chancery and secure a temporary injunction restraining the making of such deposit, in which case such payment shall be held until the final order or decree of the court." Cahill's Ill. Rev. St. c. 127b, par. 35.

That appellant knew, or must be held to have known, that, if no protest was filed with the payment of the tax, the person to whom it was paid was required to turn it over to the state treasury, in which event no action could be brought to recover it, because the state cannot be sued without its consent.

That, as to the five payments preceding the one in question, the tax, after its payment, had passed into the custody of the state treasury, and could not thereafter be recovered from the state.

That, at the time the payment in question was made, the suit to test the constitutionality of the Motor Fuel Tax Act had not been decided, and there is nothing to indicate that appellant's state of mind was then in any respect different from what it had been when the previous payments were made.

That the Motor Fuel Tax Act provides that the tax collected under the act be devoted to the building of roads in Illinois; section 7, Act of June 29, 1927; Laws Ill. 1927, p. 758.

That appellant's general practice was to add to its price charged for its motor fuel two cents per gallon for the tax, and to collect the entire sum from its customers.

These facts clearly indicate appellant's unqualified willingness at time of payment to pay the tax in question without reservation. The fact that when the suit was begun the money had not yet been turned over to the state treasury was fortuitous merely. It could have no bearing on appellant's intention, as the money when paid without the statutory protest might have been turned over to the treasury immediately after payment, and concededly appellant's remedy for recovery would have been gone. Richardson Lubricating Co. v. Kinney, 337 Ill. 122, 128, 168 N. E. 886.

The payments, under the circumstances, indicate appellant's entire willingness that the money be at once turned over to the "road fund" in the state treasury. The subsequent decision of the Supreme Court in the Chicago Motor Club Case cannot relate back to qualify or illumine appellant's state of mind at the time the tax was paid. Richardson Lubricating Co. v. Kinney, supra.

It may be noted that no distributor of motor fuel appears to have been interested in the prosecution of the Chicago Motor Club suit, which was begun and maintained solely in the interest of a user of motor fuel for automobiles, who doubtless recognized that, notwithstanding the act contemplated a licensing of the distributors and a tax on their business, it was the automobile users and not the fuel distributors who would in fact pay and bear the tax.

The quite irresistible deduction from all these facts cannot be overcome by the testimony of one of appellant's officials, given in this lawsuit, to the effect that the reason appellant made the payments was because of the pains and penalties which the act pre-

298

scribed in case of omission to make them. The statutes of Illinois make ample provision for the protection of appellant's interests in case it had chosen to resist the collection of the tax instead of freely and voluntarily paying it.

In Illinois Merchants' Trust Co. v. Harvey, supra, 335 Ill. page 296, 167 N. E. 69, 74, it is said: "We are of the opinion that the forfeiture threatened against defendants in error was cognizable in equity, and that, the demand being invalid and the result of a forfeiture being of serious consequence to defendants in error, equity would have relieved against the same. Defendants in error had sixty days in which to apply for such relief. There was adequate time to secure the aid of equity, and that court was open to them. It follows that the payment by them was voluntary and not made under compulsion or duress."

Appellant's state of mind being thus apparent from the facts, there would be no purpose in further discussion of cases wherein this or that fact has been considered as bearing upon the state of mind of the taxpayer, that is, whether he paid the tax voluntarily or under compulsion.

But it is interesting to note that the Illinois Supreme Court, under a parallel state of facts, has held there can be no recovery of the tax. Richardson Lubricating Co. v. Kinney, supra. To like effect are Standard Oil Co. v. Bollinger et al., 337 Ill. 353, 169 N. E. 236, and Agni Motor Fuel Co. v. Kinney, Bollinger et al., 340 Ill. 17, 172 N. E. 39.

The decree is affirmed.